[Cite as *Martin v. Lambert*, 2014-Ohio-715.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| BREWCE MARTIN, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 12CA7 |
| | : | |
| v. | : | |
| | : | |
| RAY LAMBERT, | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| Defendant-Appellee. | : | |
| | : | **RELEASED: 2/25/14** |

_____

APPEARANCES:

Janet G. Abaray, Calvin S. Tregre, Jr., and David C. Harman, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., Cincinnati, Ohio, for Appellant.

Deborah J. Mandt, Columbus, Ohio, for Appellee.

_____

Harsha, J.

{¶1} Brewce Martin suffered an injury on property Ray Lambert owned, but had allowed his son to use as an automobile service center. Martin appeals a summary judgment in Lambert's[1] favor on Martin's negligence and negligent entrustment claims. Martin argues the trial court erred as a matter of law because Lambert owed Martin a duty to warn him of the son's unsafe business practices and incompetency to operate an automobile service center. Martin additionally contends that genuine issues of material fact remain about whether Lambert breached his duty to exercise reasonable care and whether Lambert's breach of duty proximately caused Martin's injuries. Because Lambert did not occupy or control his son's business premises, Lambert did not owe Martin a

---

[1] Unless the context suggests otherwise, "Lambert" refers to Ray Lambert.

duty to protect Martin from the conduct or condition that caused Martin's injury. Consequently, the trial court properly entered summary judgment in Lambert's favor on Martin's negligence claim.

{¶2} Martin also asserts that Lambert negligently entrusted the business premises to his son. Martin claims Lambert's son lacked the experience and expertise to operate an automobile service center; thus, allowing the son to use the premises resulted in an inherent danger. Even if we agree with Martin that a landowner may be liable under a negligent entrustment theory when entrusting real property to another for an inherently dangerous use, as a matter of law Lambert's son's automobile service center was not inherently dangerous. Accordingly, we overrule Martin's assignment of error and affirm the trial court's judgment.

## I. FACTS

{¶3} After purchasing a used truck, Martin needed to put new rims on it. He removed the existing rims and tires and looked in his collection of rims to find suitable ones to put on the truck. Martin believed he chose four 16-inch rims, but he mistakenly chose four 16.5-inch rims. Martin then took his 16.5-inch rims and 16-inch tires to Rutland Service Center in order to have the tires placed on the rims.

{¶4} Shawn Lambert, Ray Lambert's son, owned and operated Rutland Service Center, although Ray Lambert owned the property where the business was located. The Lamberts did not enter into any formal written or verbal agreement governing this relationship, but Ray allowed Shawn to open the

business in 2003. Shawn had owned and operated it, rent-free, continuously since that time.

{¶5}   When Martin arrived at Rutland for the "ten[th] to a hundred[th] time," he instructed Shawn to put the tires on the rims he brought to the shop. At the time no one recognized that the rims and the tires were mismatched. Martin entered the service area and assisted Shawn with mounting the tires. As Martin used an air hose while attempting to place one of the 16-inch tires on a 16.5-inch rim, the tire exploded and injured Martin.

{¶6}   Martin subsequently filed a complaint against Ray Lambert and alleged that Lambert failed to maintain the premises in a reasonably safe condition and that he negligently entrusted the premises to his son.

{¶7}   Lambert filed a summary judgment motion and conceded that Martin was a business invitee and that Lambert owed him a duty to warn of any latent dangers Martin himself had created. However, Lambert asserted he did not own, operate, or control the business but merely owned the land. Therefore, he could not be held liable for Martin's injury, which occurred on his son's business premises and arose out of his son's business operation. Essentially, Lambert contended that he did not owe any duty to Martin for the premises or conditions outside his control. Lambert also denied that he negligently entrusted the property to his son.

{¶8}   The trial court granted Lambert's summary judgment motion. The court determined that Lambert did not negligently entrust the building to his son and that Lambert was not negligent under a premises liability theory because "an

owner of property [does not have] a duty to warn invitees about the alleged

incompetency of its tenants."

## II.  ASSIGNMENT OF ERROR

Appellant raises one assignment of error:

"The trial court erred to the prejudice of plaintiff-appellant in
granting defendant-appellee's motion for summary judgment."

## III.  ANALYSIS

{¶9}    In his sole assignment of error, Martin argues that the trial court

erred by entering summary judgment in Lambert's favor.  Although he raises

several reasons why the court improperly entered summary judgment in

Lambert's favor, we find the question of Lambert's duty to be dispositive of this

case.

{¶10}  Martin contends that the court incorrectly determined that Lambert

did not owe him a duty.  Martin asserts that Lambert, the owner of the property

upon which Martin suffered his injury, owed him a duty to exercise ordinary care

and to protect Martin by maintaining the premises in a reasonably safe condition

and by warning him of any dangers of which Lambert had knowledge.  Martin

argues that this duty required Lambert to warn Martin of his son's alleged

inexperience and incompetence, which Martin asserts was a defect in the

premises.  Martin claims that Lambert owed him this duty even though Lambert

did not own or operate his son's business.  Martin contends that because

Lambert was the ultimate owner of the property where his son operated the

business, Lambert necessarily maintained control of the business premises and

thus had a duty to warn Martin of the latent danger associated with his son's alleged incompetency. Martin argues that the landlord-out-of-possession-and-control exception does not absolve Lambert of liability for negligence because Lambert and his son had not entered into a formal lease agreement.

{¶11} Martin also argues that Lambert may be liable for negligently entrusting the property to his son for an alleged inherently dangerous use.

{¶12} Lambert agrees that Martin was a business invitee and that Lambert owed Martin a duty to warn of "any latent or hidden danger with regard to the building or grounds." However, Lambert contends this duty is limited to the buildings or grounds that Lambert occupied and controlled but does not extend to any buildings or grounds that he merely owned and permitted his son to use. Lambert asserts that he did not owe Martin any duty relating to his son's business or business premises because Lambert did not own or have any control over his son's business operation, which was the ultimate cause of Martin's injury.

{¶13} Lambert also asserts that his son's business operation is not an inherently dangerous use as a matter of law, so negligent entrustment does not apply.

### A. STANDARD OF REVIEW

{¶14} We review a trial court's summary judgment decision using a *de novo* standard of review. *Comer v. Risko,* 106 Ohio St.3d 185, 2005–Ohio–4559, 833 N.E.2d 712, ¶8. Under Civ.R. 56, a trial court may grant summary judgment when the movant establishes that "'(1) [n]o genuine issue as to any material fact

remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *M.H. v. Cuyahoga Falls,* 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C); *accord Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, --- Ohio St.3d ---, 2013-Ohio-4544, --- N.E.2d ---, ¶9.

## B.  NEGLIGENCE

**{¶15}**  A successful negligence action requires a plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury.  *E.g., Texler v. D.O. Summers Cleaners,* 81 Ohio St.3d 677, 680, 693 N.E.2d 217 (1998); *Jeffers v. Olexo,* 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989); *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 472 N.E.2d 707 (1984).  If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements, and if the plaintiff fails to respond as Civ.R.56 provides, the defendant is entitled to judgment as a matter of law.  *Lang v. Holly Hill Motel,* Inc., 4th Dist. Jackson No. 06CA18, 2007–Ohio–3898, ¶19, affirmed, 122 Ohio St.3d 120, 2009–Ohio–2495, 909 N.E.2d 120.

## 1.  DUTY

{¶16} Duty is a threshold question in a negligence case. *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088 ¶13; *Jackson v. Pike County Bd. Of Commr.*, 4th Dist. Pike No. 10CA805, 2010-Ohio-4875, 2010 WL 3902618, ¶15. "'Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.'" *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). "'If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence.'" *Jeffers*, 43 Ohio St.3d at 142, quoting 70 Ohio Jurisprudence 3d (1986) 53–54, Negligence, Section 13 (footnotes omitted).

{¶17} The existence of a duty is a question of law for a court to decide, even if resolving that question requires the court to consider the facts or evidence. *Grover v. Eli Lilly & Co.*, 63 Ohio St.3d 756, 762, 591 N.E.2d 696 (1992); *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989); *Ruta v. Breckenridge–Remy Co.*, 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 430 N.E.2d 935 (1982) ("Simply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised."); *O'Day v. Webb*, 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (1972) ("[A] review of the evidence is more often than not vital to the resolution of a question of law. But

the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact.").

{¶18} In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. *E.g., Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996); *Shump v. First Continental–Robinwood Assocs.,* 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). A business premises owner or occupier owes its invitees a duty to exercise ordinary care to maintain its premises in a reasonably safe condition and to warn invitees of known latent or hidden dangers. *E.g., Armstrong* at ¶5; *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203, 203, 480 N.E.2d 474 (1985); *Ray v. Wal-Mart Stores, Inc.*, --- Ohio App.3d ---, 2013-Ohio-2684, 993 N.E.2d 808 (4th Dist.), ¶18. However, this "duty does not extend to premises not in the possession and control of the business owner." *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 135, 652 N.E.2d 702 (1995).

{¶19} In this case, the parties agree that Lambert was the owner of the property, that his son occupied the premises and owned the business where Martin suffered his injury, and that Martin was his son's business invitee. Lambert further agrees that he owed Martin a duty of care applicable to business invitees. However, Lambert asserts that his duty to keep the premises in a reasonably safe condition extends only to the premises he occupied and controlled. Lambert contends that he did not owe Martin any duty relating to conditions that arose after he passed control of the premises to his son. Lambert

thus argues that because he did not occupy or control his son's automobile service center—the premises upon which Martin suffered his injury—then he did not owe Martin a duty.

## 2. LANDOWNER'S DUTY

{¶20} "Historically, a landowner's liability in tort is incident to the occupation or control of the land, which involves the owner's right and power to admit and exclude people from the premises." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644-645, 597 N.E.2d 504 (1992); *Torchik v. Boyce*, 121 Ohio St.3d 440, 2009-Ohio-1248, 905 N.E.2d 179, ¶12 ("A landowner's or occupier's liability in tort to persons injured upon their premises is based on the owner's or occupier's power and right to admit people to the premises and to exclude people from it."). "It is fundamental that to have a duty to keep premises safe for others one must be in possession and control of the premises." *Simpson*, 73 Ohio St.3d at 132. "Courts have consistently required control as a predicate to liability because the possessor of land is in the best position to diminish the danger to invitees." *Id.* at 133. Thus, a landowner who has "neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises." *Hendrix v. Eighth and Walnut Corp.*, 1 Ohio St.3d 205, 207, 438 N.E.2d 1149 (1982); *Beaney v. Carlson* (1963), 174 Ohio St. 409, 411, 189 N.E.2d 880, 881 ("Liability is an incident of occupation or control of the premises."); *Simpson* at syllabus (stating that business owner's duty extends only to premises "in the possession and control of the business owner").

{¶21} "The test to be applied in determining control has been expressed

as 'the power and right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.'" *Simpson*, 73 Ohio St.3d at 132, quoting *Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188, 497 N.E.2d 1118 (1986); *accord Mitchell v. Cleveland Elec. Illum. Co.*, 30 Ohio St.3d 92, 94, 507 N.E.2d 352 (1987) ("The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it and the substantial exercise of that right and power."). "The quantum of control necessary for premises liability is one that is physical and actual, and not one that is merely legal or theoretical." *Monnin v. Fifth Third Bank of Miami Valley, N.A.*,  103 Ohio App.3d 213, 222, 658 N.E.2d 1140 (2nd Dist.,1995).

{¶22}  "Because one person is usually both the owner and possessor of real estate, in many premises liability cases no question arises as to who has the responsibility to maintain a premises in a safe condition." *Shump*, 71 Ohio St.3d at 417.  However, when "a party other than the owner possesses a premises (as in the case of a leased premises), under the common law of premises liability, the possessor or occupier and not the owner owes the applicable legal duty to the entrant." *Id.* (citations omitted).

{¶23}  Thus, "'[a]t common law, subject to certain exceptions, the occupier or tenant, and not the landlord, [is] liable for injuries occurring to a third person on or off the premises. * * * A tenant in possession is practically the owner of the property.  If the building afterwards becomes dangerous in law, the owner [is] not liable for an injury occurring thereon.'" *Kauffman v. First Central Trust Co.*, 151

Ohio St. 298, 304, 85 N.E.2d 796 (1949), quoting *Harte v. Jones*, 287 Pa. 37, 39, 134 A. 467; *Grieser v. Huntington Nat. Bank of Columbus*, 176 Ohio St. 291, 295, 199 N.E.2d 556 (1964), quoting 32 Am.Jur. 695, Section 817 ("'A tenant having control of the demised premises is, so far as third persons or the public are concerned, the owner, and in the cases of injuries to third parties, whether on or off the premises occasioned by the condition or the use of the premises, it is the general rule that prima facie, the breach of duty, and therefore the liability, is that of the tenant and not that of the landlord.'").  Accordingly, "[t]he duty of a [commercial] landlord to keep the demised premises or part of them in repair is coextensive with the control retained by him * * *."  *Beaney v. Carlson*, 174 Ohio St. 409, 412, 189 N.E.2d 880 (1964), quoting 32 Am.Jur. 654, Section 768; *Grieser*, 176 Ohio St. at 293, quoting *Shindelbeck v. Moon*, 32 Ohio St. 264, 30 Am. Rep. 584 (1877) ("'A landlord who has demised property, parting with possession and control thereof to a tenant in occupation, is not responsible for injuries arising from defective condition of such premises, when that defect arises during the continuance of the lease.'"); *Rosen v. Concordia Evangelical Lutheran Church, Inc.*, 111 Ohio App. 54, 58, 167 N.E.2d 671 (8th Dist., 1960) ("[A] landlord out of possession and control owes no duty, either towards his tenant or toward any other person who enters on the premises during the tenancy, to take care that the premises are safe, either at the commencement of the tenancy or during its continuance unless there be concealment of known dangers not readily discoverable").  Moreover, a commercial landlord will not be liable for injuries a third person sustains on the tenant's premises if the landlord is "in no way linked

with management or direction of the affairs being conducted on such premises."
*Kauffman*, 151 Ohio St. at 305.

{¶24} To exercise control over the property sufficient to impose liability, the landlord must do more than retain authority over "routine and common acts by a landlord [such as having the authority to approve or disapprove any structural changes, being responsible for making repairs, and having the power to evict the tenant] * * *." *Richeson v. Leist*, 12th Dist. Warren No. CA2006-11-138, 2007-Ohio-3610, ¶15; *Hendrix,* 1 Ohio St.3d at 207 (stating that reserving a right to inspect the premises to enter the premises to make repairs "does not justify a finding that the lessor retained control of the premises"); *accord Monahan v. Duke Realty Corp.*, 1st Dist. Hamilton No. C-070318, 2008-Ohio-1113, ¶23 ("[N]either the reserved right of inspection nor the agreement of the lessor to make repairs is sufficient to impose liability on a commercial landlord for injuries to a third person on the premises."). Instead, to have possession and control over the premises, the landlord must "retain an absolute right to admit or exclude persons from the area." *Monahan* at ¶22; *accord Richeson* at ¶15 ("The control necessary as the basis for liability in tort implies the power and right to admit people to an area on the leased premises and to exclude people from it.").

{¶25} In *Grieser*, for instance, the court refused to impose liability upon the property owners when they did not occupy or control the premises. In that case, the tenant (Mrs. Wilders) leased property from the fee owners and then, in turn, rented part of the property to a third party. The third party died as a result of inhaling carbon monoxide fumes from a heater that Mrs. Wilders' husband had

installed twenty-four years earlier. The *Grieser* court refused to impose liability on the fee owners and explained: "[T]he fee owners of the property, out of possession and control, knew nothing about the existing conditions, including the presence of the heaters, had no right to intrude into the premises, and were under no obligation to manage and supervise the activities being conducted there." *Id.* The court further ruled that the fee owners' "right to terminate the tenancy after the expiration of the renewed lease did not" affect their non-liability. *Id.*

{¶26} In *Currier v. Penn-Ohio Logistics*, 187 Ohio App.3d 32, 2010-Ohio-198, 931 N.E.2d 129 (11th Dist.), an employee suffered fatal injuries while working on premises that his employer leased. The employee's estate subsequently filed a negligence complaint against the landlord and others. The trial court entered summary judgment in the landlord's favor, determining that the landlord did not retain possession and control even though the landlord often visited the premises and retained the right to inspect the premises and establish rules. The appellate court affirmed the trial court's judgment and noted that no evidence existed that the landlord retained the right to admit or exclude individuals from the premises or ever exercised such a right. "[T]he retention of control on the part of the landlord that * * * gives rise to liability to third parties require[s] actual, physical control, not just a legal right to control." *Id.* at ¶28. The court explained: "[I]n order for a commercial landlord to be held to have retained possession and control of the leased premises based on his retention of the right to give consent to additions or alterations, it must be demonstrated that

the landlord actually exercised physical control; it is not sufficient that he merely retained the legal or technical right to give consent to alterations or additions. *Id.* at ¶31.

{¶27} In *Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 103 Ohio App.3d 213, 658 N.E.2d 1140 (2nd Dist.,1995), the court refused to impose liability upon the holding company that owned—but did not operate—a bank branch. In *Monnin*, Fifth Third Bank of Miami Valley owned and operated a branch that Fifth Third Bank of Cincinnati and Fifth Third Bankcorp owned as the holding company. The plaintiffs asserted that the holding company was liable for two individuals' death resulting from an armed robbery, which the plaintiffs asserted resulted from a lack of appropriate security measures undertaken at the branch. The appellate court determined that the holding company could not be liable because no evidence existed that it "had control over the decisions regarding security at the * * * branch * * *, that this control was sufficient to exclude people from the [branch] premises, and that [the holding company was] in fact exercising that power." *Id.* at 222.

{¶28} Here, Martin's attempt to hold Lambert liable for injuries suffered on the business premises that his son occupied is nearly identical to the plaintiffs' attempts to impose liability on the holding company in *Monnin* and the property owners in *Grieser* and *Currier*. In both *Monnin* and this case, someone other than the occupier of the business premises held ultimate ownership of the property and retained some degree of legal authority over it. However, just as in *Monnin*, in this case there is no evidence that Lambert ever substantially

exercised any right he possessed to exclude or admit people from the premises or otherwise exercised any degree of control over his son's business.  Indeed, as Martin readily admits, Lambert took a "hands-off approach to his son's business."

{¶29}  Furthermore, even if Lambert retained the right to remove his son from the property, this right to terminate the tenancy does not constitute the control necessary to impose a duty upon him.  *Grieser*.  Likewise, any theoretical rights of control that Lambert retained do not demonstrate "control."  *Currier*.  Instead, for Lambert to have a duty to Martin for injuries suffered on Lambert's son's business premises, Lambert must have "actually exercised physical control," not simply theoretical control, over the property.  *Currier*.  Even if Lambert retained a right to inspect his son's business operation or premises, to establish rules, or to consent to additions or alterations to the premises, his retention of these rights does not demonstrate that he exercised "control" so as to give rise to liability for Martin's injuries.  *Currier*; *accord Simpson v. Big Bear*, 73 Ohio St.3d at 132 (holding that property owner must substantially exercise right of control before liability may be imposed).  There is no evidence that Lambert ever substantially exercised any rights of control.  In fact as already noted, Martin never even argues that Lambert substantially exercised any right of control.  Martin's assertions are based upon theoretical possibilities only—what Lambert could have done.  Although Lambert theoretically could have excluded third parties from the premises or theoretically could have told his son what he could and could not do with regard to the business, there simply is no evidence that Lambert ever did so.  Thus, because Lambert did not actually or

substantially exercise any control over the premises, he did not "control" them for purposes of premises liability. *Monnin*, 103 Ohio App.3d at 222 (stating that "quantum of control necessary for premises liability is one that is physical and actual, and not one that is merely legal or theoretical").

{¶30} Additionally, like *Grieser*, here Martin's injury resulted from a condition that the property owner did not create. In *Grieser*, the tenant created the alleged danger, *i.e.*, the heater; likewise in the case at bar, Lambert's son created the alleged danger, *i.e.*, the son's failure to recognize that Martin requested the son to inflate 16-inch tires on 16.5-inch rims. This supposed dangerous condition of the premises arose during Lambert's son's tenancy, did not pre-date the tenancy, and was not a pre-existing condition on the premises. Consequently, Lambert cannot be liable for an alleged hazard that arose during his son's tenancy. Instead, Lambert's son, the tenant, owed a duty to Martin and bears liability for any negligence arising from an alleged hazardous condition that the son created.

{¶31} Martin nonetheless argues that the following facts demonstrate that Lambert "[w]ithout question * * * retained ownership, possession, and control of the property at all times:" (1) Lambert admits that he allowed his son to use the building; (2) Lambert agrees that he and his son did not enter into a written lease; and (3) Lambert admits that he owns the building but he does not have a business relationship with Rutland; and (4) Lambert admits that he and his son had not entered into any lease. Martin argues that these facts create a genuine issue of material fact as to whether Lambert retained control over his son's

automobile service center, the employees, or the equipment. As a matter of law none of these facts, even if disputed, demonstrate the quantum of control necessary to impose a duty upon Lambert as the property owner. None of these facts show that Lambert actually or substantially exercised control over the business premises. Even though Martin asserts that he "has argued throughout this case that Ray Lambert maintained sole control over his property, including control of the Rutland Service Center," this is a conclusory allegation. The record does not contain any facts to show that Lambert maintained sole control over his son's business premises or any "control" sufficient to impose liability. As noted above, the facts Martin claims show that Lambert exercised sole control are not sufficient as a matter of law to constitute the "control" necessary to impose a duty upon Lambert.

{¶32} In sum, absolutely nothing in the record shows that Lambert actually or substantially exercised control over his son's business operation or business premises. Under these circumstances, Lambert was not in possession and control of the premises upon which Martin suffered his injury. Consequently, Lambert did not owe Martin a duty concerning Martin's injury on those premises.

{¶33} Moreover, even though Martin argues that Lambert was not a landlord and thus that the out-of-possession-and-control doctrine does not apply, this doctrine is not limited to the landlord-tenant situation. Instead, the principle is applicable to a *landowner* as well as a *landlord* (at least in the commercial setting). *Simmers*, 64 Ohio St.3d at 644-645 ("a *landowner's* liability in tort"); *Simpson*, 73 Ohio St.3d at 132 (stating that "*one* must be in possession and

control"); *Beaney v. Carlson*, *supra*; *Wolfe v. Bison Baseball, Inc.*, 10th Dist. Franklin No. 09AP-905, 2010-Ohio-1390, ¶8 ("*landowner's* liability in tort"). Furthermore, in *Simpson* the Ohio Supreme Court set forth the rule in terms of a "business owner's" duty to a business invitee—it did not state the rule in terms of the landowner's duty to a business invitee when the landowner is not also the business owner. The court stated: "A *business owner* has a duty to warn or protect its business invitees * * *." *Id.* at syllabus (emphasis added). *Cf.* Restatement of the Law 2d, Torts 170, Section 328E (1965)[2] (defining "possessor" as "a person who is in occupation of the land with intent to control it"); *Grieser*, 176 Ohio St. at 294-295 (construing term "owner" for purposes of statute that imposed duties upon "owners and operators of shops and factories" to prevent injuries to third persons "and came to the conclusion that the term, 'owner,' meant and comprehended the one conducting and in control of the business activities being conducted on the premises and not the owner in fee of the premises out of possession and control thereof").

{¶34} Even if this exception were limited to the landlord-tenant situation, the facts demonstrate that the legal effect of Lambert's and his son's relationship was that of landlord and tenant. "[I]n the absence of a written, enforceable lease, a tenancy at will is created." *Reid v. Plainsboro Partners III*, 10th Dist. Nos.

---

[2] The Restatement (Third) of Torts is intended to replace the Restatement (Second) of Torts. It has been drafted in various stages with the most recent release being the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010). However, the Ohio Supreme Court has not adopted any of its provisions. In fact, the Ohio Supreme Court continues to apply the Restatement (Second) of Torts. *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266.

09AP-442 and 09AP-456, 2010-Ohio-4373, ¶33; *accord New York Life Ins. Co. v. Simplex Products Corp.*, 135 Ohio St. 501, 507, 21 N.E. 585 (1939) (noting that any person who occupies premises "under bare permission" is a tenant at will). Lambert gave his son "bare permission" to use the property for a business purpose. Consequently, his son became a tenant at will and a tenancy at will existed.

**{¶35}** Martin additionally asserts that Lambert is liable for failing to protect him from his son's reasonably foreseeable negligence. Martin argues that a property owner can be liable for negligence under a premises liability theory if the property owner fails to protect invitees from reasonably foreseeable harm presented by third parties. The rule Martin cites states:

> *A breach of the standard of care* can be predicated upon the action of a third party which takes place on premises which are controlled by the possessor:
>
> "[A]n owner and occupier of land breaches his duty to invitees who are injured by the negligent acts of third persons, where such owner and occupier fails to exercise reasonable care to discover that such negligent acts of third persons are being done or are likely to be done and fails to give a warning adequate to enable such invitees to avoid harm, or fails to act to protect such invitees against such negligent acts of third parties."

*Cassano v. Antenan-Stewart, Inc.*, 87 Ohio App.3d 7, 9-10, 621 N.E.2d 826 (12th Dist.,1993) (emphasis added), quoting *Holdshoe v. Whinery*, 14 Ohio St.2d 134, 43 O.O.2d 240, 237 N.E.2d 127 (1968), paragraph four of the syllabus.

**{¶36}** A plain reading of this rule shows that it relates to a different fact pattern then that presented here. The rule provides for potential liability of a possessor of property when a business invitee is injured on the premises by the foreseeable act of a negligent third party. For instance, in *Cassano* as the

plaintiff was walking on the sidewalk in front of the pharmacy, she was struck by an automobile that had been parked in front of the store by a business invitee of Rite Aid. While the business invitee of the pharmacy was in the store, an occupant of the vehicle "engaged the automobile", causing it to strike the plaintiff on the sidewalk in front of the store. The appellate court cited the rule noted by our appellant to hold the issue of whether Rite Aid, which was the possessor/occupier of the store, could be held liable for the injury caused by a third person turned on whether the injury was foreseeable. Clearly the rule has no application to our facts. First, the rule deals with those in possession of the premises. Second, it addresses the element of a breach; it does not create a duty. Rather it applies foreseeability to determine whether an existing duty has been breached. Consequently, the trial court did not err by entering summary judgment regarding Martin's negligence claim.

## C.  NEGLIGENT ENTRUSTMENT

**{¶37}** Martin also seeks to hold Lambert liable under a negligent entrustment theory. Martin asserts that Lambert possessed a duty because the subject matter of the lease between Lambert and his son, *i.e.*, the automobile service center, involved an inherent danger when placed in the hands of Lambert's son, who Martin claims was inexperienced and incompetent to operate it.

**{¶38}** "'The theory of negligent entrustment as a basis for liability arises from the principle that "[a]nyone with normal experience is required to have knowledge of the traits and habits of * * * other human beings, and to govern

accordingly." Prosser and Keeton On Torts, Fifth Ed., Chp. 5, p. 197–198. To the extent that the negligence of another causes the harm involved, "[t]he duty arises * * * only where a reasonable person would recognize the existence of an unreasonable risk of harm to others through the intervention of such negligence." *Id.,* at p. 199.'" *Wesley v. Walraven*, 4th Dist. Washington No. 12CA18, 2013-Ohio-473, ¶45, quoting *Deangelis v. Donley*, 2nd Dist. Montgomery No. 17223 (Jan. 29, 1999) and assuming without deciding that negligent entrustment doctrine applies to a person's home. We do likewise here, *i.e.*, we assume the doctrine applies to the business without expressly deciding so.

{¶39} Few cases have considered whether a property owner may be liable for negligently entrusting real property to another. Some courts have held that there is no such thing as "negligently leasing" property to another. *Willis v. Omega Oil Co.*, 2nd Dist. Montgomery No. 11546 (Apr. 10, 1990). As the *Willis* court explained: "We do not consider land to be so inherently hazardous that an owner can be held liable in tort for negligently entrusting possession of land to a tenant." *Accord Long v. Tokai Bank of California*, 114 Ohio App.3d 116, 127, 682 N.E.2d 1052 (2nd Dist. 1996) (refusing to hold financial lessor liable under negligent leasing theory when lessor did not have any direct involvement with the leased instrumentality).

{¶40} However, a case from 1978 appears to recognize the concept of negligent leasing or negligently entrusting real property to another. *Benlehr v. Shell Oil Co.*, 62 Ohio App.2d 1, 6-7, 402 N.E.2d 1203 (1st Dist., 1978). In *Benlehr*, the plaintiffs asserted that the landlord was liable for negligently

entrusting an automobile service station to the tenant. On appeal the court framed the issue as "whether there are activities or situations involving a risk to the public so material that the law will impose a duty on a landlord to exercise due care in placing the activity within the control of a tenant." *Id.* The court agreed with the plaintiffs that "the subject matter of the lease between [the landlord] and [the tenant] was one involving a use which may fairly be said to be either inherently dangerous, or possessed of dangerous potentialities." *Id.* The court observed that the fire chief testified regarding "the explosive potential of gasoline" and that when combined with fire, a service station that serves as a repository of gasoline and petroleum products "is a potential disaster are awaiting only the congruence of the two elements." *Id.* The court determined that "[t]he act of operating a gasoline service station obviously involves a substantial risk of harm to others." *Id.* at 9. "[T]he risk of entrusting its operation to an untrained or incompetent operator would seem to invoke a peril of a magnitude sufficient to charge the lessor with a duty of acting reasonably to protect others from harm." The court thus held that when "a lessor seeks to lease property for a use which is inherently dangerous or has highly dangerous potentialities involving a substantial risk to the general public, and such danger or risk to the public is such that it may be foreseen by the lessor, the lessor owes a duty of reasonable care in selecting and entrusting such property to a lessee." *Id.* at 10.

{¶41} Even if we were to agree with the *Benlehr* court that a landlord may be liable for negligently entrusting property involving an inherently dangerous use, Lambert's son's operation of the automobile service station did not involve

such a use.  *Sun Ins., Inc. v. Edwards*, 97 Ohio App.3d 239, 243, 646 N.E.2d 535 (1st Dist., 1994) (stating that whether object is a dangerous instrumentality constitutes a question of law); *Frost v. Dayton Power and Light Co.*, 138 Ohio App.3d 182, 189, 740 N.E.2d 734, fn.3 (4th Dist., 2000) (observing that whether work is inherently dangerous is a question of law).

{¶42}  Something is "inherently dangerous" when it is dangerous per se, without requiring human intervention to produce the harmful effects.  It is not the danger arising from the collateral negligence of others under the particular circumstances.  *See* Black's Law Dictionary, (6th Edition 1991).  Thus a business or piece of equipment would be inherently dangerous if it was one from which the risks cannot be eliminated.

{¶43}  In *Pusey v. Bator*,  94 Ohio St.3d 275, 279, 762 N.E.2d 968 (2002), the Supreme Court of Ohio determined that work is inherently dangerous when it presents "a risk that is not a normal, routine matter of customary human activity, such as driving an automobile, but *** rather [presents] a special danger to those in the vicinity arising out of the particular situation created, and calling for special precautions."  *Id.* at 280 (citations omitted).  In other words, work is not inherently dangerous if there is only a general anticipation of the possibility that negligence may occur and thereby cause harm to a third party.  *Id.*  Simply because the property owner may generally anticipate that the tenant might be negligent and cause harm to a third party does not mean that the tenant's occupancy and use of the premises involves an inherent danger.

{¶44}  Here, Lambert's son's automobile service center did not involve

special risks that were inherent without human intervention; instead it involved ordinary and customary dangers that may arise when performing automobile services, including filling tires with air.  Here Martin has not identified any specific objects or activities within the automobile service center that were inherently dangerous, *i.e.*, dangerous by their very nature.  An air hose may become dangerous but it is not dangerous by its very nature.  It becomes potentially dangerous when used improperly, just as almost any tool or piece of equipment may become dangerous if used improperly.

{¶45}  Although it is foreseeable that negligence may occur when performing the ordinary and common activities of a automobile service center, this general anticipation does not cause the service center to be inherently dangerous.  Filling tires with air and performing routine maintenance on automobiles does not create a special danger sufficient to conclude that the activity is inherently dangerous.  Unlike the service station in *Benlehr* in this case no evidence exists that Lambert's son's business housed gasoline or other explosives or that it otherwise posed a risk of serious harm to the public.

{¶46}  Martin argues that the presence of signs warning customers to stay out of the service area for safety reasons by itself shows that the business carried the potential for inherent dangers.  Martin further asserts that Shawn's inexperience and routine practice of permitting customers into the service area "made the service station even more dangerous and posed a substantial risk of harm to customers."  Neither the presence of warning signs nor Shawn's alleged lack of experience involves an activity or situation presenting a risk to the public

so material that the law will impose a duty on a landlord to exercise due care in placing the activity within the control of a tenant.  Consequently, the trial court did not err by entering summary judgment in Lambert's favor regarding Martin's negligent entrustment claim.

{¶47}  Accordingly, we overrule Martin's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
         William H. Harsha, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**