[Cite as *Stokes v. Lake Property Mgt., L.L.C.*, 2020-Ohio-65.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| DIANE STOKES, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | : | **CASE NO.  2018-L-073** |
| - vs - | : | |
| LAKE PROPERTY MANAGEMENT, LLC, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2017 CV 001439.

Judgment: Affirmed.


*Mark D. McGraw,* 820 West Superior Avenue, Suite 800, Cleveland, OH 44113 (For Plaintiff-Appellant).

*Gary L. Nicholson* and *Mark A. Greer,* Gallagher Sharp LLP, Sixth Floor, Bulkley Building, 1501 Euclid Avenue, Cleveland, OH 44115-2108 (For Defendant-Appellee).


TIMOTHY P. CANNON, P.J.

{¶1}    Appellant, Diane Stokes ("Stokes"), appeals from the summary judgment ruling in favor of appellee, Lake Property Management, LLC ("Lake Property"), on all claims in her complaint.  The judgment was entered by the Lake County Court of Common Pleas on May 10, 2018.  For the following reasons, the trial court's judgment is affirmed.

{¶2}    Lake Property owns a commercial building, in which the company's office is located.  Several commercial tenants are also located in the building, including Marino's

Hair Design ("Marino's"). Marino's has been a tenant for more than seventeen years, since before Lake Property purchased the building in 2012.

{¶3} Before 2013, most of Marino's clients entered the building through a front door, facing the roadway. During that year, Lake Property's managing partner, Mark Cain, paid for the installation of a back door. Marino's customers were able to use the rear parking lot and enter the building through this back door. The back door opens to a common hallway; an entrance to Marino's is located in that hallway.

{¶4} The incident involving Stokes occurred in December 2014. At that time, Stokes had been a client of Marino's for five years, where she had an appointment approximately once a week. Stokes is elderly and uses a walker. Although there is a handicap accessible parking area and entrance near Marino's front door, Stokes consistently used the rear parking lot and entrance after the rear door was installed.

{¶5} On the day at issue, Stokes parked in the rear lot and, using her walker, entered the building through the rear door without incident. Following her appointment, Stokes exited Marino's through the common hallway to the rear door. After opening the door with her right hand, Stokes used her left hand to push her walker through the doorway. According to Stokes, the door closed quickly and hit her backside, which caused her to fall over the walker and land on the parking lot asphalt. Stokes suffered injuries to multiple parts of her body, including her face, neck, and shoulder.

{¶6} Stokes filed a three-count complaint against Lake Property, alleging (1) negligent installation and maintenance of the rear door, (2) negligent failure to warn, and (3) creating and maintaining a nuisance. In part, Stokes alleges Lake Property was aware

2

that the rear door was difficult to open and closed too quickly but did nothing to remedy the problem.

{¶7} Lake Property moved for summary judgment, advancing three arguments. First, Lake Property argued that, as a commercial landlord, it only owed Stokes a duty to refrain from willful and wanton misconduct, and Stokes had not produced any evidence meeting this high standard. Second, Lake Property argued Stokes failed to produce any evidence that it had notice of any allegedly hazardous condition on the property. Finally, Lake Property argued that, to the extent Stokes alleges the door was defective, she admittedly knew of the alleged danger and continued to use the door at her own peril.

{¶8} In response, Stokes argued that Lake Property owed her a duty of ordinary care because she was its "business invitee by implied invitation" and because she was a "frequenter" of the building. She maintained that Lake Property had breached its duty of ordinary care. Further, in relation to her prior knowledge of the danger posed by the door, Stokes referenced her deposition, in which she testified the door had closed much quicker when she exited the building that day than it ever had in the past.

{¶9} The trial court granted summary judgment in favor of Lake Property. The court held that Stokes was a licensee, but not a "frequenter"; there was no evidence that Lake Property had engaged in willful and wanton misconduct; and, even if Stokes was a business invitee, she had prior knowledge of the door's alleged condition.

{¶10} Stokes noticed an appeal from this judgment and raises nine assignments of error for our review:

> [1.] The trial court committed reversible error in determining that [Lake Property] was a commercial landlord out of possession and control of the place of injury.

3

[2.] The court committed reversible error in determining that there was no evidence before the court that [Lake Property] was in possession and control of the area of the injury.

[3.] The trial court committed reversible error in determining that [Stokes] was not a business invitee of [Lake Property] by implied invitation.

[4.] The trial court committed reversible error in finding that [Stokes] was not a frequenter of the building * * *.

[5.] The trial court committed reversible error in finding that [Lake Property's] only duty of care was to refrain from willfully and wantonly injuring plaintiff.

[6.] The trial court committed reversible error in finding there was no evidence [Lake Property] behaved in a willful and/or wanton manner.

[7.] The trial court committed reversible error in finding that [Stokes'] claims fail because she had prior knowledge of the door.

[8.] The trial court committed reversible error in failing to rule on [Stokes'] third cause of action for nuisance in its Judgment Entry granting summary judgment to the defendant.

[9.] The trial court committed reversible error in not ruling on [Stokes'] claim that [Lake Property] failed to warn [Stokes] of the problems with the rear door in its Judgment Entry granting summary judgment.

{¶11} An appellate court reviews a trial court's decision to grant summary judgment under a de novo standard of review, i.e., "independently and without deference to the trial court's determination." *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted); *see also Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶12} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that:

> (1) [n]o genuine issue as to any material fact remains to be litigated;
> (2) the moving party is entitled to judgment as a matter of law; and
> (3) it appears from the evidence that reasonable minds can come to

4

but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977); *see also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992) ("Doubts must be resolved in favor of the non-moving party.").

{¶13} We collectively address Stokes' first, second, third, fifth, and sixth assignments of error, all of which pertain to the duty she was owed by Lake Property at the time of her injuries.

{¶14} "It is fundamental that in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶8, citing *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Gingrich v. D'Ambrozio*, 11th Dist. Trumbull No. 2008-T-0103, 2009-Ohio-2956, ¶18.

{¶15} Duty is the threshold determination in every negligence case. *Martin v. Lambert*, 4th Dist. Meigs No. 12CA7, 2014-Ohio-715, ¶16, citing *Armstrong*, *supra*, at ¶13. "'Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.'" *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989). "The existence of a duty is a question of law for a court to decide, even if resolving that question requires the court to consider the facts or evidence." *Martin*, *supra*, at ¶17, citing *Grover v. Eli Lilly & Co.*, 63 Ohio St.3d 756, 762 (1992); *Mussivand*

5

*v. David*, 45 Ohio St.3d 314, 318 (1989); *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68 (1982); and *O'Day v. Webb*, 29 Ohio St.2d 215, 219 (1972).

{¶16} "It is axiomatic that, under the common law of premises liability, the status of the person who enters upon the land of another (*i.e.*, trespasser, licensee, or invitee) defines the scope of the legal duty that the responsible party owes the entrant." *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St.3d 414, 417 (1994). "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986) (citation omitted). Business invitees are owed a duty of ordinary care: the owner or occupier is to "maintain its premises in a reasonably safe condition" and "warn invitees of known latent or hidden dangers." *Martin*, *supra*, at ¶18, citing *Armstrong*, *supra*, at ¶5.

{¶17} When the premises are owned by a landlord and rented by a business owner, the issue of who owes the duty to a business invitee depends on who is in possession and control of a given area. *See Wireman v. Keneco Distribs., Inc.*, 75 Ohio St.3d 103, 108 (1996); *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 132 (1995); *Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188 (1986)

{¶18} When a commercial landlord retains possession and control over common areas of the premises, that landlord owes business invitees of its tenants a duty to exercise ordinary care in those common areas. *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph four of the syllabus. "In determining the issue of control between a landlord and tenant, the logical starting point is the lease." *Carrozza v. Olympia Mgt., Ltd.*, 12th Dist. Butler Nos. CA96-11-228 & CA96-11-234, 1997 WL 538952, *2 (Sept. 2,

6

1997) and *McCullion v. Ohio Valley Mall Co.*, 7th Dist. Mahoning No. 97 C.A. 175, 2000 WL 179368, *7 (Feb. 10, 2000), both citing *Beaney v. Carlson*, 174 Ohio St. 409, 412 (1963).

{¶19} Article 10.1 of the lease between Lake Property and Marino's provides:

> All parking areas, driveways, *entrances and exits thereto*, sidewalks, ramps, landscaped areas, exterior stairways, and all other Common Areas and facilities provided by Landlord for the common use of tenants of the Shopping Center and their officers, agents, employees and customers, shall at all times be subject to the exclusive control and management of Landlord * * *. Landlord shall have the right to operate and maintain the same in such manner as Landlord, in its sole discretion, shall determine from time to time, including, without limitation, the right to employ all personnel and to make all rules and regulations pertaining to and necessary for the operation and maintenance of said Common Areas and facilities. [Emphasis added.]

{¶20} Construing the lease in a light most favorable to Stokes, Lake Property controlled the rear door. Further, the affidavits and deposition testimony provide that Lake Property installed the rear door and maintained the entrances and exits to the building. Accordingly, Lake Property owed Stokes, as the business invitee of Marino's, a duty of ordinary care in maintaining the rear door and accompanying common area.

{¶21} The trial court erred in concluding (1) that Lake Property did not retain possession and control of the place of Stokes' injury; (2) that Stokes was a licensee of Lake Property at the time she was injured; and (3) that Lake Property owed Stokes no duty except to refrain from willful and wanton misconduct. As a result of this latter holding, the trial court's conclusion that there was no evidence Stokes was injured as a result of willful and wanton misconduct is of no consequence.

{¶22} Stokes' first, second, third, fifth, and sixth assignments of error have merit.

{¶23} Under her fourth assignment of error, Stokes challenges the trial court's determination that she was not a "frequenter" of the premises, as provided in R.C. 4101.11:

> Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

A "frequenter" is defined as "every person, other than an employee, who may go in or be in a place of employment under circumstances which render the person other than a trespasser." R.C. 4121.01(A)(5). An "employer" is defined as "every person, firm, corporation, agent, manager, representative, or other person having control or custody of any employment, place of employment, or employee." R.C. 4121.01(A)(3).

{¶24} "R.C. 4101.11 and 4101.12 are commonly referred to as 'frequenter' statutes. The 'frequenter' statutes were enacted to benefit employees. The subsequent passage of the Ohio Workers' Compensation Act, however, rendered these statutes largely obsolete." *Gillotti v. Rimedio*, 11th Dist. Trumbull No. 2002-T-0106, 2003-Ohio-5708, ¶20, citing *Kucharski v. Natl. Eng. Contracting Co.*, 69 Ohio St.3d 430, 434 (1994). "Today the 'frequenter' statutes are most commonly used by subcontractors who seek damages from property owners or contractors in privity with their employers, who fail to keep their property safe from hazards for 'frequenters.'" *Id.* "The Supreme Court of Ohio has clarified that an employer's duty under the 'frequenter' statutes 'is no more than a codification of the common-law duty owed by an owner or occupier of premises to

8

invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge.'" *Id.*, quoting *Eicher v. United States Steel Corp.*, 32 Ohio St.3d 248, 249 (1987).

{¶25} Thus, the duty imposed under R.C. 4101.11 is identical to the duty owed to a business invitee. In light of our disposition above, we conclude that the issue of whether R.C. 4101.11 applies to the situation at hand is moot.

{¶26} Stokes' fourth assignment of error is moot.

{¶27} The trial court's error with regard to the duty owed to Stokes by Lake Property is not, however, reversible error. As outlined below, Stokes has not demonstrated a genuine issue of material fact with regard to the alleged breach of duty.

{¶28} In her seventh and ninth assignments of error, Stokes argues the trial court erred in finding she had prior knowledge of the door's condition and in not ruling on her claim that Lake Property failed to warn her of problems with the rear door.

{¶29} The scope of the duty owed by Lake Property depends upon the foreseeability of the resulting harm. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. The foreseeability of harm usually depends on the defendant's knowledge." *Menifee*, *supra*, at 77 (internal citations omitted). "Until specific conduct involving an unreasonable risk is made manifest by the evidence presented, there is no issue to submit to the jury." *Id.* (citations omitted).

{¶30} In other words, if the cause of Stokes' injury could not have been anticipated and avoided or warned against by Lake Property, Stokes cannot succeed on her negligence claims. Thus, in determining whether a question of fact exists as to the

9

foreseeability of Stokes' injury, we should only consider the circumstances that Lake Property perceived or should have perceived at the time it acted or failed to act. *See id.* We must also consider the circumstances that Stokes perceived or should have perceived at the time of her injury. *See Sidle, supra,* at 48, quoting Prosser, *Law of Torts,* 403 (3 Ed.1964) ("'In the usual case, there is no obligation to protect the invitee against dangers which are known to him * * *. Against such conditions it may normally be expected that the visitor will protect himself.'").

{¶31} Stokes alleges she was injured because Lake Property negligently installed and maintained the rear door. The only evidentiary materials Stokes offered in this regard are (1) averments from other individuals that the door was heavy and/or closed quickly since its installation and (2) Stokes' deposition testimony that as she exited the building on the day she was injured, the door closed faster than it ever had before.

{¶32} There is no doubt Stokes had prior knowledge of her allegations that the door had always been heavy and closed quickly. Stokes had used that door twice a day, once a week, for nearly one year. She testified as to conversations with employees and patrons of Marino's complaining of its heft. Despite its alleged unwieldiness, Stokes continued to use the rear door rather than the handicap accessible main entrance at the front of the building. Stokes, therefore, cannot succeed on her negligence claim if she alleges the condition of the door remained unchanged from the day it was installed.

{¶33} Hence, Stokes relies on her deposition testimony that the condition of the door was different on the day of her injury. More specifically, she contends the door performed differently when she used it to exit the building than when she had used it to enter the building that same day. She contends, therefore, that she did not have prior

10

knowledge the door would close as fast as it did on the day of her injury. However, summary judgment cannot be precluded on this basis. Even if Stokes did *not* have prior knowledge, she must still demonstrate a question of fact as to one of the following:

> '1. That the defendant through its officers or employees was responsible for the hazard complained of; or
>
> '2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
>
> '3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.'

*Kokinos v. Ohio Greyhound, Inc.*, 153 Ohio St. 435, 436-37 (1950), quoting *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943). *See also Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38, 40 (1967), quoting *Englehardt v. Philipps*, 136 Ohio St. 73, 78 (1939) ("'it is the defendant's superior knowledge of existing dangers or perils to persons going upon the property which is the basis of liability'").

{¶34} Stokes has not demonstrated her injury was foreseeable such that it could have been avoided by an act of, or a warning from, Lake Property. Stokes did not provide any evidence that Lake Property caused the door to close faster than it ever had before, or that Lake Property knew or should have known it was going to do so. Stokes herself testified the door had not closed that fast when she entered the building that day or on any other day she had used the door.

{¶35} Maria Carlone, the owner of Marino's, testified that "probably about two" of her customers had previously said the door "was a little heavy to open." When asked if she had any difficulty coming in or going out the rear door, Ms. Carlone testified she had not. When asked if any of her employees ever remarked that the door was difficult to

11

operate, Ms. Carlone testified she did not remember any of them doing so. This contradicts the affidavit signed by Jessica Brown, an employee of Marino's, in which Ms. Brown averred she told Ms. Carlone two or three times that the weight of the door needed to be adjusted. Even if it is true, however, that the owner and employees of Marino's received complaints about the door, this does not qualify as notice to Lake Property. Stokes has not directed us to any case law that suggests notice to a tenant can be imputed to the landlord. In fact, Ms. Carlone testified that she had refused to sign a statement prepared by Stokes' counsel because it suggested she told Mark Cain of Lake Property to fix the door. Ms. Carlone has no recollection of ever speaking to Mr. Cain about the rear door.

{¶36} Stokes' complaint alleges, including within the third cause of action relating to nuisance, that Lake Property was negligent and/or created a dangerous condition as a result of its "installation and maintenance" of the door in question. Mr. White, a maintenance person for Lake Property, testified he was familiar with the door both before and after Stokes' injury and that there was nothing wrong with or unusual about the way the door opened and closed. In Mr. White's experience with the door, he felt that if anything, the door closed too slowly. This testimony was sufficient to shift the burden to Stokes to establish a question of fact regarding what it was about the door that was defective. Even if Stokes' version of events is accurate, she presented no evidence whatsoever as to the alleged deficiencies in either installation or maintenance of the door. The fact the door may have closed more quickly on that occasion, without more, does not demonstrate an issue of fact as to defective installation or maintenance.

{¶37} Stokes has not provided evidence that demonstrates an issue of fact regarding Lake Property's alleged breach of its duty of care.

{¶38} Stokes' seventh and ninth assignments of error are without merit.

{¶39} Finally, under her eighth assignment of error, Stokes argues the trial court erred by failing to rule on her nuisance cause of action, which alleged that Lake Property, "in its installation and maintenance of the rear door, created and allowed to exist a dangerous condition that constituted a nuisance."

{¶40} Lake Property moved for summary judgment in its favor "as to all of the plaintiff's claims against it." Lake Property maintained that Stokes "has not even produced evidence that the door constituted a dangerous condition." The trial court granted summary judgment on Stokes' complaint in favor of Lake Property. Thus, the assertion that the trial court did not rule on Stokes' nuisance claim is inaccurate.

{¶41} Further, Stokes could only succeed on her nuisance claim if she was successful on her negligence claims. Stokes alleged facts that, if true, would amount to a "qualified nuisance," which is "premised upon negligence and is 'essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm.'" *Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, ¶23 (3d Dist.), quoting *Kramer v. Angel's Path, L.L.C.*, 174 Ohio App.3d 359, 2007-Ohio-7099, ¶21 (6th Dist.), citing *State ex rel. R.T.G., Inc., v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, ¶59. "A qualified nuisance is a lawful act 'so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another.'" *Kramer*, *supra*, at ¶21, quoting *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.*, 146 Ohio St. 406 (1946), paragraph two of the syllabus. "Under such circumstances, the nuisance arises from a

13

failure to exercise due care." *Id.*, citing *Taylor v. City of Cincinnati*, 143 Ohio St. 426, 436 (1944). "'[T]he allegations of nuisance and negligence therefore merge, as the nuisance claims rely upon a finding of negligence.'" *Davis*, *supra*, at ¶23, quoting *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 64 Ohio St.3d 274, 276 (1992).

{¶42} Based on our conclusion that Stokes cannot succeed on her negligence claims, it was not error for the trial court to grant summary judgment on her nuisance claim, as well.

{¶43} Stokes' eighth assignment of error is not well taken.

{¶44} The judgment of the Lake County Court of Common Pleas is affirmed, albeit on different grounds.


CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶45} I dissent on the seventh and ninth assignments. I would reverse and remand.

{¶46} "[W]e must be mindful that "'[s]ummary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable

14

minds can reach only an adverse conclusion as to the party opposing the motion.'"'" (Citations omitted.) *Osborne v. Lyles*, 63 Ohio St.3d 326, 333, 587 N.E.2d 825 (1992).

{¶47} Regarding the seventh assignment, prior knowledge of an injury-causing defect can defeat a negligence claim. *Virde v. Stalnaker*, 9th Dist. Summit No. 21729, 2004-Ohio-2671, ¶ 16. The trial court concluded that since Stokes used the door once a week for more than a year, she was fully aware that it was heavy and hard to open. In her deposition, however, Stokes testified that the back door closed faster when she was exiting than it ever had in the past and that the force was so great that it bruised her backside. While she acknowledges knowing the door was heavy, she denies prior knowledge that this door occasionally closed faster than normal. This issue remains for the jury to decide because upon viewing Stokes' testimony in her favor, a factual dispute exists regarding her knowledge.

{¶48} As to the ninth assignment, I similarly conclude that Stokes raises a factual dispute regarding whether Lake Property had constructive notice of the difficulties associated with the door.

{¶49} "''Constructive notice requires proof by direct or circumstantial evidence that the store in the exercise of ordinary care had or should have had notice of the condition * * * because of the length of time of its presence * * *." To demonstrate * * * constructive notice, plaintiff must show that the "danger had existed for a sufficient length of time reasonable to justify the *inference* that the failure to warn against it or remove it was attributable to a want of ordinary care."'" (Emphasis added.) (Citations omitted.) *Allen v. 5125 Peno, LLC*, 11th Dist. Trumbull No. 2016-T-0120, 2017-Ohio-8941,101 N.E.3d 484, ¶ 60.

{¶50} Constructive knowledge can be found even if the length of the hazard's existence has not been significant. *Schon v. National Tea Co.*, 28 Ohio App.2d 49, 53-54, 274 N.E.2d 578 (7th Dist.1971); *Kokinos v. Ohio Greyhound, Inc.*, 153 Ohio St. 435, 92 N.E.2d 386 (1950) (holding evidence that dried vomit with a footprint through it remained on staircase for more than thirty minutes sufficient for inference of constructive notice); *Rist v. Big Bear Stores, Inc.*, 10th Dist. Franklin No. 89AP-533, 1989 WL 119970, *2-3 (Oct. 12, 1989) (issue of fact where customer fell on a lettuce leaf and it was undisputed that the floor was swept every one and one-half hours); *Stillberger v. Great Scot, Inc.*, 3d Dist. Hancock No. 5-86-1 (Jan. 13, 1987) (finding issue of fact for jury where employee who mopped denied seeing a red pool of liquid, but who said he mopped "very fast," and customer fell minutes later).

{¶51} Jessica Brown, a former Marino employee, avers in her affidavit that when on break she would sometimes hold the door open "for the beer delivery man so the door wouldn't slam shut on his cart." Brown states that on more than one occasion, she saw the door slam shut on this deliveryman as he tried to push a cart through the doorway. Brown also told the salon owner at least twice that "something needed to happen with that door * * *."

{¶52} Reasonable minds could infer that Lake Property's lack of knowledge was attributable to the failure to exercise ordinary care. Thus, summary judgment is improper.