OPINION
{¶ 1} Appellant, James D. Cline, appeals the judgment entered by the Geauga County Court of Common Pleas. Cline was sentenced to an aggregate prison term of 38 years for his convictions for aggravated vehicular homicide, aggravated vehicular assault, operating a motor vehicle under the influence of alcohol ("O.V.I."), and failure to comply with an order or signal of a police officer. *Page 2 
 {¶ 2} On March 2, 2006, Cline was driving a pick-up truck on State Route 700 in Burton Township. His vehicle went left-of-center, striking a vehicle occupied by three college students. Two of the students died as a result of the accident, and the third student was severely injured.
 {¶ 3} As a result of the incident, Cline was indicted on 13 individual counts. Counts 1 and 2 of the indictment charged Cline with aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a) and (B)(2)(a)(i), which are first-degree felonies. Count 3 of the indictment charged Cline with aggravated vehicular assault, in violation of R.C.2903.08(A)(1)(a) and (B)(1)(a), which is a second-degree felony. Counts 4 and 5 of the indictment charged Cline with O.V.I., in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(g). These two counts alleged that Cline had five or more O.V.I. convictions in the past 20 years, thus they were charged as fourth-degree felonies. Count 6 of the indictment charged Cline with failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5)(a)(i), which is a third-degree felony. Counts 7 and 8 of the indictment charged Cline with aggravated vehicular homicide, in violation of R.C.2903.06(A)(2)(a) and (B)(3), which are second-degree felonies. Count 9 of the indictment charged Cline with aggravated vehicular assault, in violation of 2903.08(A)(2)(b) and (C)(2), which is a third-degree felony. Counts 10 and 11 of the indictment charged Cline with involuntary manslaughter, in violation of R.C. 2903.04(A), first-degree felonies. Count 12 of the indictment charged Cline with driving under suspension in violation of R.C. 4510.11(A), which is a first-degree misdemeanor. Count 13 of the indictment charged Cline with driving under O.V.I. suspension, in violation of R.C. 4510.14(A), a first-degree misdemeanor. *Page 3 
 {¶ 4} Cline initially pled not guilty to the charges in the indictment. Geauga County Public Defender Robert Umholtz was appointed to represent Cline.
 {¶ 5} On July 31, 2006, a change of plea hearing was held. Cline withdrew his not guilty plea. He pled guilty to Counts 1, 2, 3, 5, and 6 of the indictment. Upon the state's recommendation, the trial court dismissed the remaining counts of the indictment.
 {¶ 6} On August 3, 2006, Cline sent a hand-written letter to the trial court asking that a motion to withdraw his guilty plea be entered. The trial court forwarded a copy of this letter to Attorney Umholtz. No further action was taken by Attorney Umholtz, or Cline individually, to file a formal motion to withdraw Cline's guilty plea.
 {¶ 7} A sentencing hearing was scheduled for September 6, 2006. On September 5, 2006, Cline filed a motion to continue the sentencing hearing for the purpose of obtaining a psychological assessment. The trial court denied this motion, and the sentencing hearing occurred as scheduled.
 {¶ 8} At the sentencing hearing, the trial court asked Cline whether there was any reason that it should not proceed with sentencing. Cline responded that he did not believe the plea agreement was followed and that he believed he had not been adequately represented by counsel. The trial court did not address Cline's concerns on the record. After this discussion, Cline exercised his allocution rights and gave a statement in mitigation of sentence.
 {¶ 9} The trial court sentenced Cline to ten-year prison terms for his convictions on Counts 1 and 2 of the indictment; an eight-year prison term for his conviction on Count 3 of the indictment; a five-year prison term for his conviction on Count 5 of the *Page 4 
indictment; and a five-year prison term for his conviction on Count 6 of the indictment. The trial court ordered that all of these prison sentences be served consecutively. Thus, Cline's aggregate prison sentence was 38 years.
 {¶ 10} Cline timely appealed the trial court's judgment entry to this court. After receiving the record in this matter, we noticed the letter from Cline to the trial court was missing. Therefore, upon our request, the trial court supplemented the record with Cline's letter to the trial court and a copy of the cover letter the trial court sent to Attorney Umholtz.
 {¶ 11} Cline raises two assignments of error. His first assignment of error is:
 {¶ 12} "The trial court erred by failing to adhere to the mandates of Crim.R. 32(A)(1) and R.C. 2929.19(A)."
 {¶ 13} Cline's argument combines the requirements of R.C. 2929.19(A) and Crim.R. 32(A)(1). While there are similarities between the statute and the criminal rule, we believe there are important distinctions that must be noted.
 {¶ 14} Crim.R. 32 provides, in part:
 {¶ 15} "Sentence shall be imposed without unnecessary delay. Pending sentence, the court may commit the defendant or continue or alter the bail. At the time of imposing sentence, the court shall do all of the following:
 {¶ 16} "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."
 {¶ 17} R.C. 2929.19 provides, in pertinent part: *Page 5 
 {¶ 18} "(A)(1) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony * * *. At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative, * * * and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the verdict of the jury or finding of the court and ask the offender whether the offender hasanything to say as to why sentence should not be imposed upon theoffender." (Emphasis added.)
 {¶ 19} Thus, Crim.R. 32(A) provides the defendant an opportunity to address the court prior to sentencing to explain his version of the offense, offer evidence in mitigation of sentence, or express remorse.[1] R.C. 2929.19(A), however, appears to be more procedural in nature, in that it permits the defendant to inform the court of any reasons sentence should not be imposed. With this distinction in mind, we will address Cline's arguments.
 {¶ 20} The Supreme Court of Ohio has held that "[t]rial courts must painstakingly adhere to Crim.R. 32, guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse."[2]
 {¶ 21} Cline's allocution rights were not infringed in this matter. Cline was fully permitted to address the trial court regarding mitigation of his sentence. His statement comprised two full pages of the transcript. In his allocution statement, Cline expressed *Page 6 
remorse, explained that he did not intend to hurt anyone, and said that if there was any way for him to change the outcome, he would.
 {¶ 22} Next, we will address whether the trial court complied with R.C. 2929.19(A)(1). The following colloquy occurred at the sentencing hearing:
 {¶ 23} "THE COURT: I will let you make a statement. I want to know if there is any reason that this sentencing should not proceed at this time?
 {¶ 24} "MR. CLINE: I am not sure, your Honor. I am really not sure. * * *
 {¶ 25} "I entered into some things that I thought were agreements, and I'm not sure these agreements were followed.
 {¶ 26} "There has [sic] been changes made.
 {¶ 27} "THE COURT: I am just talking about the procedural stance of this case, today, us going forward with the proceeding. I denied the motion to continue.
 {¶ 28} "MR. CLINE: I understand that, your Honor.
 {¶ 29} "THE COURT: Do you have any other reason that you object to the proceeding today?
 {¶ 30} "MR. CLINE: Yeah. I feel as though I have been improperly represented in this, your Honor.
 {¶ 31} "I do. I do. And I don't want to make a mockery of this, * * *
 {¶ 32} "And you know, people say that I have no remorse.
 {¶ 33} "THE COURT: I don't want to get in to that part of it.
 {¶ 34} "I recognize that your statement, that you feel you have been improperly represented.
 {¶ 35} "MR. CLINE: I feel that I have not fully — *Page 7 
 {¶ 36} "THE COURT: Don't interrupt me. You can bring that up a later time.
 {¶ 37} "I am going forward. If that's your only objection, I am going forward with the sentencing at this time."
 {¶ 38} Cline was then given the opportunity to make his statement in mitigation of sentence. At the conclusion of Cline's allocution statement, the following colloquy occurred.
 {¶ 39} "MR. CLINE: * * *
 {¶ 40} "That's all I have to say. [Public Defender Umholtz], I don't want to take it out on you personally, but I don't feel that you have represented me properly, and I put it in two letters to your Honor.
 {¶ 41} "THE COURT: You can take that up with Mr. Umholtz at a later time.
 {¶ 42} "Anything that you want to offer, Mr. Umholtz?"
 {¶ 43} The trial court complied with R.C. 2929.19(A)(1) by asking Cline if there is any reason sentencing should not proceed. Cline raised an issue of whether the plea agreement was followed and indicated that he believed he was improperly represented by counsel. Cline argues the trial court had an additional duty to inquire following his responses to the court's question.
 {¶ 44} Initially, we will address Cline's argument as it relates to the trial court's inaction regarding Cline's concern about the plea agreement being adhered to.
 {¶ 45} The only concern Cline raised about the plea agreement is whether it was followed. The signed guilty plea agreement indicates there are no other terms to the agreement outside of what is contained in the plea agreement itself. Thus, there could only be limited reasons why the plea agreement was not adhered to. Since the written *Page 8 
guilty plea was in the record, the trial court could have easily determined that the terms of the guilty plea agreement were followed. This would explain the trial court's failure to further inquire about Cline's allegation that the terms of the plea agreement were not followed.
 {¶ 46} We have independently reviewed the plea agreement and confirm that the plea agreement was precisely followed in this matter. The charges that the state agreed to recommend be dismissed in the plea agreement were dismissed by the trial court. Further, Cline was only convicted of the offenses that he specifically agreed to plead guilty to. Thus, any perceived error in the trial court's failure to inquire regarding Cline's assertion that the plea agreement was not followed is harmless beyond a reasonable doubt. See Crim.R. 52(A). An error is harmless if it is not prejudicial, i.e., if the results of the proceedings would not have been different without the error.[3] In this matter, the results of the proceedings would not have been different had the trial court inquired about the state's alleged noncompliance with the plea agreement, because the record clearly reveals that the plea agreement was strictly adhered to.
 {¶ 47} The second issue raised by Cline at the sentencing hearing was the representation he received from trial counsel. As an initial matter, we note that Cline, in the present appeal, has not raised or asserted any claim of ineffective assistance of counsel.
 {¶ 48} The Supreme Court of Ohio held that "when `an indigent accused questions the effectiveness and adequacy of assigned counsel, * * * it is the duty of the *Page 9 
trial judge to inquire into the complaint and make such inquiry a part of the record.'"[4] The court further noted that "`inquiry may be brief and minimal, but it must be made.'"[5] In Deal, the defendant raised concerns about his counsel during the guilt phase of his trial.[6] In this matter, Cline raised his concern about counsel at his sentencing hearing. We note several courts have held that theDeal holding does not apply at sentencing hearings.[7] In explaining this distinction, the Second Appellate District held:
 {¶ 49} "Unlike an expression of dissatisfaction concerning the performance of trial counsel uttered during the guilt phase of the trial, an expression of dissatisfaction following conviction on all counts is unremarkable. It is not uncommon for a criminal defendant, or any other litigant, for that matter, to feel, and to express, sentiments of dissatisfaction with trial counsel after an adverse verdict has been rendered. There is no relief that the trial court can afford the criminal defendant at that point other than a new trial, and the convicted criminal defendant may seek that relief through an appropriate motion, through an appeal, or through a petition for post-conviction relief, if the relief is warranted."[8]
 {¶ 50} We acknowledge that, as a result of his guilty plea, Cline did not have a jury trial. However, the Second District's analysis can be applied to this matter. At a sentencing hearing, a defendant is faced with the finality of the proceedings and the reality that a prison term is imminent. Thus, he may employ "last-ditch" efforts in an *Page 10 
attempt to avoid that outcome. If Cline believed Attorney Umholtz was not adequately representing him during the plea negotiations, he should have raised that concern at the appropriate time, i.e., at the change of plea hearing. At the change of plea hearing, Cline stated he agreed with the terms of the plea agreement, that he discussed the plea agreement with his attorney, that he understood and signed the written plea agreement, and that he understood the rights he was waiving by entering the guilty plea. In addition to dispelling Cline's assertion that the plea agreement was not adhered to, the fact that the plea agreement was reduced to writing negates any contention by Cline that the ultimate plea agreement was different than what he agreed to with his counsel. Also, at no time during the change of plea hearing did Cline express concern with the representation provided by Attorney Umholtz. Thus, based on the facts and circumstances of this case, we agree with the proposition that the trial court in this matter did not have a duty to conduct a Deal inquiry at the sentencing hearing.
 {¶ 51} Moreover, we note the duty prescribed by Deal "arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further."[9] In this matter, Cline only made general statements that he was not satisfied with Attorney Umholtz's representation. He did not allege a specific instance of deficient performance. For this additional reason, the trial court was not required to inquire regarding Cline's concern about his representation.
 {¶ 52} We have held that the trial court did not have a duty to conduct a Deal inquiry following Cline's statement about his dissatisfaction with counsel. However, the better practice would have been for the trial court to conduct a minimal inquiry regarding *Page 11 
Cline's concerns. This practice would have permitted the trial court to quickly dispose of any nonmeritorious claims and would have resulted in a more complete record on appeal. However, under the specific facts and circumstances set forth herein, the trial court in this matter was not required to conduct such an inquiry.
 {¶ 53} Finally, Cline does not argue how he was prejudiced by the trial court's actions. Specifically, on appeal, Cline does not raise ineffective assistance of trial counsel as an assigned error. In addition, we note that the only significant action trial counsel assisted Cline with was the guilty plea. On appeal, Cline does not assert an argument that his guilty plea was not entered knowingly, voluntarily, and intelligently.
 {¶ 54} Cline's first assignment of error is without merit.
 {¶ 55} Cline's second assignment of error is:
 {¶ 56} "The trial court abused its discretion by denying appellant's motion to withdraw his guilty plea."
 {¶ 57} "An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally."[10]
 {¶ 58} Cline never filed a written motion to withdraw his guilty plea. However, in an August 2006 letter to the trial court, Cline requested that he be permitted to "withdraw his plea of guilty." Since Cline was represented by counsel, this letter was forwarded to Attorney Umholtz. The trial court acted correctly in forwarding the letter to Cline's appointed counsel and not further considering it. This is because once a defendant "accepts counsel's assistance and does not move the court to proceed pro *Page 12 
se, he may not `act as co-counsel on his own behalf.'"[11] While Cline expressed dissatisfaction with his counsel in the letter, he did not seek to proceed pro se nor did he ask for substitute counsel. Further, Attorney Umholtz did not seek to withdraw as counsel.
 {¶ 59} For reasons not contained in the record, a formal motion to withdraw the guilty plea was not filed. Possibly, after discussing the matter with Attorney Umholtz, Cline changed his mind regarding his desire to withdraw his guilty plea. This possibility is supported by the fact that Cline appeared at the sentencing hearing and raised concerns that the plea agreement was not being followed. Such actions suggest that Cline continued to ratify the plea agreement.
 {¶ 60} In addition, at the sentencing hearing, Cline never formally made an oral motion to the court to withdraw his guilty plea. Nor do we consider the concerns raised by Cline regarding the state's alleged noncompliance with the plea agreement to be analogous to a request to withdraw his plea. The August 2006 letter indicates that Cline was personally familiar with the appropriate language to be used if he wished to withdraw his guilty plea, but he never suggested this at the sentencing hearing. As a result, the trial court cannot be faulted for failing to allow a motion that was never properly before it.
 {¶ 61} Cline cites this court's opinion in State v. Glavic in support of his position.[12] The defendant in that case, at the sentencing hearing, asked "`[c]an I stop all *Page 13 
the many cards and withdraw my plea? Then while — I'll withdraw my plea.'"[13] The defendant directly moved the court to withdraw his guilty plea. In this matter, Cline did not ask the court to withdraw his plea. Cline argues that his statements to the court regarding his dissatisfaction with counsel and his belief that the plea agreement was not followed should be construed as a motion to withdraw his guilty plea. We disagree.
 {¶ 62} There is nothing in the record to suggest that Cline sought to withdraw his guilty plea. Cline argues that, had the trial court engaged him in an inquiry, he would have been prompted to move the court to withdraw his plea. Cline's argument is pure speculation. As noted above, Cline was aware of the proper language to be used if he wished to withdraw his plea. However, he failed to use that language at the sentencing hearing.
 {¶ 63} Further, if anything, Cline's statement regarding the plea agreement sought to enforce the agreement. He expressed concern that the agreement was not followed. He never indicated that he had changed his mind and no longer wished to plead guilty. Nor did he protest his innocence. To the contrary, his actions were focused on his belief that the state was deficient in meeting its obligations of the plea agreement.
 {¶ 64} Since Cline failed to move the court to withdraw his guilty plea, the trial court did not err by failing to address the absent motion.
 {¶ 65} Cline's second assignment of error is without merit.
 {¶ 66} The judgment of the trial court is affirmed. *Page 14 
CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur.
[1] State v. Green (2000), 90 Ohio St.3d 352, 359-360.
[2] Id.
[3] (Citations omitted.) State v. Fisher, 99 Ohio St.3d 127,2003-Ohio-2761, at ¶ 7.
[4] State v. Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283, at ¶ 138, quoting State v. Deal (1969), 17 Ohio St.2d 17, syllabus.
[5] Id., quoting State v. King (1995), 104 Ohio App.3d 434, 437.
[6] State v. Deal, 17 Ohio St.2d at 17-18.
[7] See State v. Harris, 2d Dist. No. 19796, 2004-Ohio-3570, at ¶32-35, citing State v. Bruton (Nov. 4, 1981), 9th Dist. No. 10036, 1981 Ohio App. LEXIS 12414. See, also, State v. Lawrence (Sept. 28, 1993), 4th Dist. No. 93 CA 1940, 1993 Ohio App. LEXIS 5046, at *3-8.
[8] State v. Harris, at ¶ 35.
[9] State v. Carter (1998), 128 Ohio App.3d 419, 423, citing State v.Deal, 17 Ohio St.2d at 19.
[10] Crim.R. 47.
[11] State v. Greenleaf, 11th Dist. No. 2005-P-0017, 2006-Ohio-4317, at ¶ 70, quoting State v. Thompson (1987), 37 Ohio St.3d 1, 6-7.
[12] State v. Glavic (2001), 143 Ohio App.3d 583.
[13] Id. at 589. *Page 1