[Cite as *Payne v. Ohio Performance Academy*, 2017-Ohio-8006.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kathryn R. Payne, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-202 |
| v. | : | (C.P.C. No. 15CV-3704) |
| Ohio Performance Academy, Inc. et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 29, 2017

**On brief:** *Allen Schulman* and *Stacie L. Roth*, for appellant.
**Argued:** *Stacie L. Roth.*

**On brief:** *Alan E. Mazur*. **Argued:** *Alan E. Mazur.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Kathryn R. Payne, appeals from the judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Ohio Performance Academy, Inc. ("OPA"), VV Venue, LLC ("VV Venue"), and Vaud-Villities Productions, Inc. ("VVP"). For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Unless otherwise noted, the following facts are undisputed. VV Venue owns the real estate and facility at 4411 Tamarack Boulevard in Columbus, Ohio that houses the Northland Performing Arts Center ("NPAC"). The NPAC building includes the Black Box

Theater. OPA holds a long-term lease with VV Venue and rents the space out for performances and other events.

{¶ 3} Pertinent to this appeal, on March 12, 2014, OPA entered into a rental agreement with the Columbus Dance Theater ("CDT") for a one-time performance. According to the rental agreement between OPA and CDT, CDT director Tim Veach rented the Black Box Theater, green room, and lobby from OPA for a performance to occur on April 12, 2014. OPA designated itself as "landlord" within the agreement, and Scott Jones, an independent contractor hired by OPA to handle rentals at the NPAC facility, signed on OPA's behalf. (Rental Agreement at 6.) VV Venue and VVP were not parties to the rental agreement. The rental term included the performance day and the day prior to the event, Friday, April 11, 2014, for rehearsal and room set-up. Under the terms of the agreement, CDT was permitted to occupy and make reasonable use of the premises for the purpose of the event and such systems and equipment identified in the agreement. The "[s]ystems" identified in the agreement are:

- Standard Stage Layout (No Runway), Standard Sound and Lights, Wireless microphones
- Standard Seating on risers
- (21) 60" Rnd. 8 Top Tables with white full length table cloth
- CD Play, Projectors/Screens
- Kitchen access for caterer
- Sound and lighting engineers for event
- Black Box Theater lights adjusted for banquet seating by NPAC
- Tiktz.com

 (Rental Agreement at 1.)

{¶ 4} The rental agreement states that CDT was subject to all OPA policies applicable to use of the premises and was obligated to comply with all reasonable requests by OPA's staff and personnel. OPA was responsible for utilities and alcohol sales for the event. The agreement further indicates that CDT inspected the premises, fixtures, and any systems it will use, and acknowledges that they are in a reasonable and acceptable condition for CDT's intended use. CDT agreed, under a "disclaimer, limitation of liability and indemnification" clause, that:

> [T]he Premises and use of any systems or Services provided hereunder are provided on an "AS IS, WHERE IS" basis, and that Landlord, its officers, employees, agents, successors and assigns make no warranty or representation as to their condition or suitability for Renter's purpose(s) and shall have no liability whatsoever for any damage or injury to Renter, its guests or invitees, that may arise directly or indirectly under this Agreement or from the use of the Premise and any systems or Services provided hereunder. Further, except where specifically provided otherwise in this agreement, landlord has no obligation and is not responsible to provide any labor, services, systems, equipment or property for any purpose (for setup, teardown, use of systems and equipment, or otherwise) and shall bear no responsibility whatsoever for any services, systems, equipment or property volunteered for the benefit of Renter.

(Emphasis sic.) (Rental Agreement at 4.)

{¶ 5} On April 11, 2014, set-up and rehearsal day, OPA provided an elevated modular stage comprised of panels sitting on frames, along with movable stairs two-to-three steps high, a mid-stage curtain, and a curtain behind the stage that covers the back wall. With this set up, when the general and work lights are off, the backstage area behind the mid-stage curtain is completely dark.

{¶ 6} Jones and Veach were present for rehearsal. According to Veach, when he arrived for rehearsal he noticed that no "[g]low [t]ape," tape that glows in the dark, was placed on the edge of the backstage, so he requested glow tape from someone who he believed to be a part of OPA's crew. (Veach Dep. at 22.) Veach agreed that he assumed glow tape was then put down when he saw people move. However, the parties do not dispute that glow tape was not applied along the edge of the stage.

{¶ 7} Appellant, who CDT had hired as the featured performer as an independent contractor, arrived for rehearsal, walked up onto the stage by using a few steps, and sat at a piano situated at the front of the stage. For the first 30 to 45 minutes, appellant worked with the sound engineer, a time in which the curtain to backstage was open. At one point during the rehearsal, the curtain was closed and Veach instructed appellant to go backstage in order to practice her entrance from behind the curtain. Appellant moved from her piano, which was still in the light, through the curtain to backstage, which was

"[t]otally dark"—she could not see anything—intending to wait there until her name was called.  (Payne Dep. at 51.)  According to appellant, this was the first time she had been behind the curtain, but she was not surprised that it was dark backstage based on her prior general experience in theater.  After a few steps behind the curtain, appellant states she did not see glow tape and therefore assumed she was safe, so she turned to face stage front.  While doing so, her right foot went to the side and off the edge of the stage, and appellant fell the down stairs sustaining injuries.

{¶ 8}  On May 1, 2015, appellant filed a complaint against appellees and CDT alleging causes of action of premises liability and respondeat superior.  On June 2, 2015, CDT answered and filed a cross-claim against appellees for indemnity and contribution, and several days later, appellees answered and filed a cross-claim for breach of contract, indemnification, and contribution against CDT.

{¶ 9}  On February 5, 2016, appellees filed a motion for summary judgment as to the claims raised by appellant based on darkness as an open and obvious hazard and the "step-in-the-dark" rule, and a motion for summary judgment as to CDT's cross-claim.  (Mot. For Summ. Jgmt. at 8.)  Appellant filed a memorandum contra on February 24, 2017 asserting that defendants, including OPA, owed her a duty of care as a business invitee and failed to maintain their facility in a safe manner by failing to place glow tape in a dangerous area, that OPA was responsible for the stage layout which includes placement of glow tape as an industry standard, the condition was not open and obvious, and that, as a seasoned performer, appellant's step into the dark was reasonable given that she saw no glow tape defining an edge.  Appellant additionally asserted that the rental agreement is unconscionable to the extent it bars a claim for OPA's failure to place glow tape.  On March 2, 2016, appellees replied reasserting that it owed no duty to appellant because darkness is an open and obvious condition, the rental agreement did not require OPA to apply glow tape, and the rental agreement was not unconscionable.  CDT likewise filed a motion for summary judgment as to appellant's claims.

{¶ 10} On January 9, 2017, the trial court issued a decision granting appellees' motions for summary judgment as to appellant's claims and as to CDT's cross-claim, and denying CDT's motion for summary judgment as to appellant's claims.  Regarding OPA, the trial court stated that a lease agreement transfers both possession and control of the

premises to the tenant absent a contrary agreement and disagreed with appellant's argument that OPA had a duty, pursuant to the rental agreement, to mark the stage boundaries with glow tape. The trial court did not address the open and obvious or step-in-the-dark rule in relation to OPA.[1] The trial court notes that the rental agreement did not require OPA to install glow tape but "merely provides that OPA shall provide []Standard Stage Layout (No Runway), Standard Sound and Lights, Wireless Microphones," and that OPA leased the space in an "AS IS, WHERE IS" condition. (Emphasis sic.) (Trial Ct. Decision at 7.) The trial court concluded that appellant failed to provide evidence to create a genuine issue of material fact. Regarding VV Venue, the trial court found that the lease agreement between VV Venue and OPA divested VV Venue of possession and control of the premises and that VV Venue did not otherwise occupy, manage, or control the NPAC Black Box Theater at the time of the incident. Thus, the trial court found that VV Venue neither owed or breached a duty to appellant. Regarding VVP, the trial court likewise found that VVP was not exercising any of its rights under its sub-lease and otherwise had no involvement in the occurrence leading to appellant's injury. However, in regard to CDT, the trial court found that genuine issues of material fact exist concerning whether CDT breached a duty owed to appellant when its agent (Veach) directed appellant to step in the dark and "whether a reasonable person in [appellant's] position would have no reason to expect danger or would have reason to not expect it." (Trial Ct. Decision at 9.) Thus, the court found summary judgment in favor of appellees appropriate but denied summary judgment in favor of CDT.

{¶ 11} Thereafter, on February 7, 2017, appellant filed a notice dismissing CDT as a defendant pursuant to Civ.R. 41(A). On the same day, appellant filed an appeal to this court. On February 14, 2017, appellees filed a notice dismissing its cross-claim against CDT, and CDT filed a notice dismissing its cross-claim against appellees. On February 16,

---

[1] We note the unusual procedural history whereby the trial court did not address the grounds originally raised by appellees in their motion for summary judgment. However, the parties briefed the issue of OPA's duty to place glow tape, and neither party has challenged the trial court's decision regarding OPA's duty on procedural grounds.

2017, the trial court filed an order stating that CDT's notice of dismissal terminated the case.[2]

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant presents two assignments of error:

> [1.] THE TRIAL [COURT] ERRED IN GRANTING SUMMARY JUDGMENT BY FINDING OHIO PERFORMANCE ACADEMY, INC. WAS NOT REQUIRED UNDER THE RENTAL AGREEMENT TO PLACE GLOW TAPE AND INSTEAD, LEASED THE PREMISES "AS IS, WHERE IS."
>
> [2.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF VV VENUE, LLC BY FINDING IT OWED NOT [sic] DUTY TO APPELLANT.

## III.  STANDARD OF REVIEW

{¶ 13} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing* Co., 54 Ohio St.2d 64, 66 (1978).  "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial.  *Dresher* at 293.  The

---

[2] The trial court's January 9, 2017 summary judgment decision became a final, appealable order on appellant's dismissal of CDT as a defendant under Civ.R. 41(A)(1)(a). *Six v. Gahanna Trailer Servs.*, 10th Dist. No. 16AP-91, 2007-Ohio-7131, ¶ 11, fn. 1 (determining trial court's decision granting summary judgment for one of several defendants in a civil action became a final, appealable order when the plaintiff voluntarily dismissed the remaining parties to the suit pursuant to Civ.R. 41(A)(1) and noting the associated cross-claim was rendered moot); *Boyland v. Giant Eagle*, 10th Dist. No. 17AP-133, 2017-Ohio-7335; *Denham v. New Carlisle*, 86 Ohio St.3d 594, 597 (1999); *Pattison v. W.W. Grainger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276, ¶ 14-20.  "[V]oluntary dismissal pursuant to Civ.R. 41(A) renders the parties as if no suit had ever been filed against only the dismissed parties." *Boyland* at ¶7.

nonmoving party may not rest on the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 14} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). "We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds." *Gabriel* at ¶ 12, citing *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

## IV. DISCUSSION

### A. First Assignment of Error

{¶ 15} Under the first assignment of error, appellant contends the trial court erred in determining that OPA was not required to place the glow tape and leased the premises "[a]s is, [w]here is." (Appellant's Brief at 12.) We find appellant's assignment of error lacks merit.

{¶ 16} Appellant first argues that an issue of fact remains as to whether placement of the glow tape was the responsibility of OPA as a part of the "standard stage layout" provision of the rental agreement and by way of Veach asking for the tape to be placed. Appellees counter that the rental agreement passed possession or control of the NPAC space at the time the incident occurred to CDT, and, with no evidence of a contrary agreement, OPA neither owed nor breached a duty to appellant. OPA states that the rental agreement did not contain a provision requiring glow tape and did contain an "as is, where is" provision and notes that no testimony to an industry standard came from an expert witness. Furthermore, appellees argue that even if there is an issue of fact as to whether appellant is an invitee as to OPA (rather than CDT), OPA still owes her no duty by virtue of the open-and-obvious doctrine.

{¶ 17} To prevail on her claim of premises lability, appellant was required to prove (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. *Beair v. KFC Natl. Mgt. Co.*, 10th Dist. No. 03AP-487, 2004-Ohio-1410, ¶ 8; *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). " 'If the party moving for summary judgment in a negligence action can point to evidence illustrating that the nonmoving party will be unable to prove any one of these elements, then the movant is entitled to judgment as a matter of law.' " *Chilton-Clark v. Fishel*, 10th Dist. No. 16AP-76, 2016-Ohio-7135, ¶ 11, quoting *Second Natl. Bank of Warren v. Demshar*, 124 Ohio App.3d 645, 648 (11th Dist.1997).

{¶ 18} "The existence of a duty is a question of law for a court to decide, even if resolving that question requires the court to consider the facts or evidence." *Martin v. Lambert*, 4th Dist. No. 12CA7, 2014-Ohio-715, ¶ 17. As stated by *Martin* at ¶ 18:

> In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. *E.g.*, *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 1996 Ohio 137, 662 N.E.2d 287 (1996); *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417, 1994 Ohio 427, 644 N.E.2d 291 (1994). A business premises owner or occupier owes its invitees a duty to exercise ordinary care to maintain its premises in a reasonably safe condition and to warn invitees of known latent or hidden dangers. *E.g.*, *Armstrong* [*v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573] at ¶5; *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203, 18 Ohio B. 267, 480 N.E.2d 474 (1985); *Ray v. Wal-Mart Stores, Inc.*, ___ Ohio App.3d ___, 2013-Ohio-2684, 993 N.E.2d 808 (4th Dist.), ¶18. However, this "duty does not extend to premises not in the possession and control of the business owner." *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 135, 1995 Ohio 203, 652 N.E.2d 702 (1995).

{¶ 19} Under the common law of premises liability, when a property is leased, as a general rule, the possessor and occupier rather than the landlord or landowner owes the applicable legal duty to an entrant. *Id.* at ¶ 21, 33; *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417 (1994). Whether a duty to an entrant to the premises nevertheless survives the lease remains " 'coextensive with the control

retained' " by the landlord. *Martin* at ¶ 23, quoting *Beaney v. Carlson*, 174 Ohio St. 409, 412 (1964), quoting 32 American Jurisprudence, Section 768, at 654.

{¶ 20} To determine whether a business owner had possession and control of the premises, "[t]he test to be applied * * * has been expressed as 'the power and right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.' " *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 132 (1995), quoting *Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188 (1986); *Martin* at ¶ 32 (finding landowner owed no duty to injured third party where evidence did not show that landowner "actually or substantially exercised control over [the lessee's] business operation or business premises"). Possession and control in the premises liability context means more than retaining authority over " 'routine and common acts * * * [such as having the authority to approve or disapprove any structural changes, being responsible for making repairs, and having the power to evict the tenant].' " *Id.* at ¶ 24, quoting *Richeson v. Leist*, 12th Dist. No. CA2006-11-138, 2007-Ohio-3610, ¶ 15. *See also Doe v. Cub Foods*, 115 Ohio App.3d 473, 476 (10th Dist.1996) ("[O]ne, not in possession and control of a premises, could nevertheless assume a duty with regard to that property."). "[A] commercial landlord will not be liable for injuries a third person sustains on the tenant's premises if the landlord is 'in no way linked with management or direction of the affairs being conducted on such premises.' " *Martin* at ¶ 23, quoting *Kauffman v. First Cent. Trust Co.*, 151 Ohio St. 298, 305 (1949).

{¶ 21} The language of the lease is instructive in determining whether a landlord retained possession and control of the premises or otherwise assume a duty. *Krause v. Spartan Stores, Inc.*, 158 Ohio App.3d 304, 2004-Ohio-4365, ¶ 12 (6th Dist.); *Cub Foods*. The lease is a contract between the parties. *Id.* "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Id.*; *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720. Conversely, when a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent.

*Galatis* at ¶ 12; *Thomas v. Am. Elec. Power Co.*, 10th Dist. No. 03AP-1192, 2005-Ohio-1958, ¶ 39.

{¶ 22} Here, per the rental agreement, OPA permitted CDT to "occupy" and make "reasonable use" of the specified premises, systems, and equipment for the term of the rental. (Rental Agreement at 3.) OPA remained involved at the premises by providing a "[s]tandard [s]tage [l]ayout" among other listed items. (Rental Agreement at 1.) Appellant contends that OPA's duty to her arises from the "[s]tandard [s]tage [l]ayout" provision of the rental agreement, which she believes encompasses the responsibility to place glow tape. At a minimum, appellant argues that issues of material fact remain on this point.

{¶ 23} Even if disputes remain as to who bore the responsibly to place the glow tape, appellant has not explained how retaining a responsibility to place glow tape establishes possession and control under the test set forth in *Simpson*, which requires the landlord to retain the power and right to admit and exclude people from the premises and an actual, substantial exercise of that power. Even so, nothing in the record shows " 'a substantial exercise' " of the right and power to admit and exclude people from the premises by OPA as required by *Simpson*. *Id.* at 132, quoting, *Wills* at 188. Without record evidence of OPA making a substantial exercise of that right, summary judgment in favor of OPA is appropriate due to a lack of duty to appellant. *Krause* (holding that, even if a question of fact exists about whether a landlord retained the right to admit or exclude persons from the premises, summary judgment in favor of the landlord was appropriate where no record evidence existed that the landlord ever actually exercised a right to admit or exclude persons from the premises).

{¶ 24} Appellant does not argue any other provision of the rental agreement creates a material issue of fact on whether OPA retained control over the premises. Moreover, appellant has not argued assumption of duty as a basis for reversal or otherwise cited *Doe* or other legal authority to support such an argument. We decline to do so on appellant's behalf. Considering all the above, appellant has not met her burden to affirmatively demonstrate error on appeal. *Watkins v. Holderman*, 10th Dist. No. 11AP-491, 2012-Ohio-1707, ¶ 11; *see also* App.R. 16(A).

{¶ 25} We note that both parties make arguments about the limited liability, indemnity, and "AS IS, WHERE IS" terms in the rental agreement, and appellant argues that to the extent those terms bar her claim against OPA, the rental agreement is unconscionable. (Emphasis sic.) (Rental Agreement at 4.) However, because our decision is not based on those clauses, both parties' arguments to those points are moot.

{¶ 26} Considering all the above, we find appellant's assignment of error lacks merit, and summary judgment in favor of OPA is appropriate. As a result, we need not address appellees' alternative argument regarding the open-and-obvious doctrine and the "step-in-the-dark" rule in the first instance.

{¶ 27} Accordingly, appellant's first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 28} Under the second assignment of error, appellant contends that issues of fact remain as to whether VV Venue can be held liable for appellant's fall, since VV Venue was responsible for the maintenance of the building, and no agreement absolved it from liability. We disagree.

{¶ 29} As provided above, as a general rule, a lease transfers possession and control of the premises. *Martin* at ¶ 21, 33. A landowner who leases a premise may remain liable to an entrant if the landlord retains possession and control of the premises. *Id.* The test to determine whether possession and control is retained by a landowner is whether the landowner had " 'the power and right to admit people to the premises and to exclude people from it,' " and the record shows " 'a substantial exercise' " of that right and power. *Simpson* at 132, quoting *Wills* at 188. Retaining authority over routine and common acts such as making repairs and having the power to evict the tenant are insufficient to establish possession and control for the purposes of premise liability. *Martin* at ¶ 24.

{¶ 30} Here, it is undisputed that VV Venue leased the area where the injury occurred to OPA, was not a party to the rental agreement to CDT, and had nothing to do with stage set up or management of the Black Box Theater. Appellees supported its motion for summary judgment with Payne's deposition, an affidavit of the sole member of VV Venue, and the rental agreement. We find that at the time of appellant's injury, VV Venue had neither possession nor control of the premises under premises liability law.

Therefore, VV Venue owed no duty to appellant as a matter of law, and summary judgment in VV Venue's favor was appropriate.

{¶ 31} Accordingly, appellant's second assignment of error is overruled.

## V.  CONCLUSION

{¶ 32} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 33} I respectfully dissent from the opinion of the majority, because in my view reliance on *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130 (1995), does not sufficiently square with the facts presented.  The subsequent appellate cases citing *Simpson*, whether they follow or distinguish *Simpson*, thus far have largely applied *Simpson* in connection with criminal assaults of patrons on commercial property—not close enough to the facts in Payne's situation of falling off a stage.  Moreover, the focus on control and by whom—VV Venue, LLC ("VV Venue"), Ohio Performance Academy, Inc. ("OPA"), or Columbus Dance Theater ("CDT")—is for the most part under *Simpson* subject to an analysis on whether the specific property on which the mishap occurred was a common area among multiple lessees or possessors of property involving adjacency and not subleasing.  Much of the application or distinguishing of *Simpson* by other Ohio appellate courts centers on *which* part of the property was leased, such as a parking lot or common area.  While the lobby of the Northland Performing Arts Center ("NPAC"), generally a common area, was rented to CDT, Payne's injury did not occur in the lobby, but on the stage, a part of the premises integral to VV Venue's rental of the NPAC to OPA and OPA's subsequent rental to CDT.

{¶ 34} The Seventh District Court of Appeals in 2015 pointed out in *Grant v. Spann*, 7th Dist. No. 13 MA 2, 2015-Ohio-831, ¶ 14, that in *Simpson*:

> In finding that Big Bear Stores was not liable, the [Ohio Supreme] Court highlighted the fact that the incident occurred on adjacent property, not on property owned by Big

> Bear Stores. *Id.* [at 134.] Clearly, this case is silent as to any duty between co-owners of property and is inapplicable to the question at hand.

The Eighth District Court of Appeals has also narrowed *Simpson's* application in noting that "the court determined in its syllabus that a business owner has a duty to warn or protect its business invitees from *criminal acts of third parties* when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner. The duty does not extend to premises not in the possession and control of the business owner." (Emphasis added.) *Doe v. Beach House Dev. Co.*, 136 Ohio App.3d 573 (8th Dist.2000).

{¶ 35} The majority states in citing *Krause v. Spartan Stores, Inc.*, 158 Ohio App.3d 304, 2004-Ohio-4365, ¶ 12 (6th Dist.), that there is no record or evidence that the landlord (VV Venue and OPA) ever actually exercised the right to admit or exclude persons from the premises in determining the question of possession and control in affirming the summary judgment of the trial court. But that is not the issue to be analyzed first, according to *Krause*:

> We shall *first examine the lease between the appellees* to determine whether R&D had the power and the right to admit or exclude people from the premises. The lease, of course, is a contract between the parties. *If terms in a contract are clear and unambiguous, interpretation is a question of law for the court. Alexander Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 246, 374 N.E.2d 146, paragraph one of the syllabus. *Where the language is ambiguous, however, a question of fact for the jury exists. Amstutz v. The Prudential Ins. Co. of Am.* (1940), 136 Ohio St. 404, 408, 26 N.E.2d 454.

(Emphasis added.) *Krause* at ¶ 12.

{¶ 36} It appears that the majority and I diverge on the question of the clarity of the contract language of "Standard Stage Layout (No Runway)" between OPA and CDT and whether that language can or should be taken to have included glow tape. (Rental Agreement at 1.) But according to *Krause,* this very question may need more factual development. If glow tape is "standard," then the business of VV Venue and Vaud-Villities Productions, Inc. in ownership of the NPAC to provide a venue for stage shows,

performances and events, and OPA's long-term lease with VV Venue and its role in renting out space for performances and other events suggest similar missions. And CDT's rental of the Black Box Theater, green room, and lobby for the April 12, 2014 show was also not dissimilar to the basic purpose of use of the venue by all parties involved. Whether a duty can be ascribed to or was undertaken by any of them, thus also may be a factual determination.

{¶ 37} The majority recognizes our decision in which we have previously distinguished *Simpson* to uphold a jury verdict finding landowner liability when the verdict was reached before the release of *Simpson* but the appeal was decided after. This Court emphasized *Simpson*'s core ruling to be as set forth in its syllabus:

> Without reiterating all of the facts in this case, this court finds that this case is distinguishable from *Simpson*, and further finds that *Simpson* does not foreclose the verdict originally rendered in this case. In Simpson, the Ohio Supreme Court held as follows:
>
> "A business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner. The duty does not extend to premises not in the possession and control of the business owner." 73 Ohio St. 3d at 130.
>
> In *Simpson*, the plaintiff was attacked and robbed while walking to her car on the west side of the Big Bear store. Pursuant to the lease between Big Bear and Graceland Shoppers Limited Partnership ("Graceland"), the common areas, including the sidewalks and parking areas, were for the joint use of all tenants, their customers, and their employees. The limited right was one of common use and not control. *Furthermore, the lease specifically assigned responsibility for maintenance of the common areas to Graceland and expressly included security as a component of that maintenance.*
>
> In the present case, appellant was beaten and robbed in the parking lot in front of appellee's store on Brice Road. Pursuant to the lease, appellee had a nonexclusive right in common with the other tenants to use the parking area and

facilities, including, but not limited to, driveways, entrances and exits thereto, employee parking areas, truckways, and landscaped areas. The lessor, who is not a party to this case, had the duty to provide maintenance of the common areas.

At first blush, the holding in *Simpson* appears to require judgment in favor of appellee; however, upon a closer reading, this court concludes that it does not. *In the present case, evidence was submitted to the jury that appellee had assumed the duty to provide security in the area of the parking lot immediately in front of the store where the attack upon appellant occurred. In fact, the jury was instructed that they could find appellee liable if they found that appellee had assumed the duty to provide security.* Although the facts of the present case show that appellee did not have "possession and control" of the parking lot, this court finds, as it did originally that there was evidence before the jury from which they could have concluded that appellee had assumed the duty to provide security in the parking lot. *This court does not read the Simpson case to foreclose the possibility that one, not in possession and control of a premises, could nevertheless assume a duty with regard to that property.* Because of the facts of *Simpson*, and the clear duty set forth in the lease that obligated the landlord to provide security, the issue of assumption of a duty as a basis for liability was not presented to, or decided by, the court. As such, this court concludes that the trial court erred in granting judgment in favor of appellee on the basis that the Supreme Court's holding in *Simpson* mandated such a ruling.

(Emphasis added.) *Doe v. Cub Foods*, 115 Ohio App.3d 473, 475-76 (10th Dist.1996). Because summary judgment is based on entitlement as a matter of law, we should apply the *Cub Foods* decision even when it has not been specifically raised by the parties or considered by the trial court, since we stand in the trial court's shoes in a de novo review. (" ' "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." ' " *Johnston v. State*, 10th Dist. No. 12AP-1022, 2016-Ohio-4761, ¶ 7, quoting *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, quoting *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).) And this we should do with consistency.

{¶ 38} By applying *Simpson* without overruling *Cub Foods,* the majority's analysis has imposed an inapposite factual analysis of landowner and landlord duty based on exercise and control without taking the "open and obvious" bull by the horns and grappling with the legal conclusion of whether the missing glow tape was or was not "open and obvious." If found to be such as a matter of law, the duty of VV Venue and OPA could be obviated (if found to be open and obvious) without applying *Simpson* and determining duty on questions of control and whether or not it was exercised by a land owner or a landlord.

{¶ 39} In my view, we must at least consider the "open and obvious" issue, and perhaps the trial court should have had before it more evidence on which to base a legal decision. "At least with respect to common law duties, '[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises.' *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus." *Walker v. Hartford on the Lake, L.L.C.*, 10th Dist. No. 16AP-271, 2016-Ohio-7792, ¶ 31. I would not sidestep the question of whether the absence of glow tape on the edge of a dark stage that would ordinarily be an open and obvious danger—the dark—could create, as a matter of law, the opposite effect for a seasoned stage performer such as Payne—a danger that is not open and obvious.

{¶ 40} Because " 'the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact.' " *Martin v. Lambert*, 4th Dist. No. 12CA7, 2014-Ohio-715, ¶ 17, quoting *O'Day v. Webb*, 29 Ohio St.2d 215, 219 (1972). I can understand that the majority may wish to avoid the pitfalls of analyzing the open and obvious issue under a somewhat convoluted analysis in considering the existence of a legal duty. But even if we determined that, as a matter of law, glow tape should have been provided (and I do not believe enough facts have been adduced to make the determination), we would still have the opportunity to apply *Simpson* as between VV Venue and OPA and according to the terms of the contract between OPA and CDT.

{¶ 41} In short, to focus on whether or not the parties relieved by the trial court of liability engaged in substantial exercise of power to admit and exclude people so as to be relieved of duty is an unnecessary or at least premature analysis at this point. Applied at this juncture, it stretches the application of *Simpson* beyond its original purpose and

meaning. And if we intend to overrule *Cub Foods,* we should do so, leaving no room for confusion.

{¶ 42} The Second District Court of Appeals, in relying on and extensively discussing this Court's holding and distinguishing of the application of *Simpson* in our *Cub Foods* decision, stated "[w]e could disagree with the result in *Cub Foods*, but we see no reason to quarrel with the conclusions of the Tenth District. We agree that a landowner can voluntarily assume a duty to provide security in areas where the landowner has no contractual obligation." *McManes v. Kor Group*, 2d Dist. No. 19550, 2003-Ohio-1763, ¶ 32.

{¶ 43} Even adopting the holding of the Fourth District Court of Appeals as applied to VV Venue that "a landowner who has neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises," it is difficult to envision a scenario whereby OPA would be eliminated from the suit on summary judgment under the facts of the instant case. (Citations omitted.) *Martin* at ¶ 20.

{¶ 44} In *Martin*, the Fourth District stated that a landowner's tenant (in this case his son) "owed a duty to Martin and bears liability for any negligence arising from an alleged hazardous condition that the son [tenant] created." *Id.* at ¶ 30. Here, there is a factual question as to whether the lack of glow tape was a condition created by VV Venue, OPA, and/or CDT. This is a question that should be placed before a jury, and this conclusion is supported by the paucity of evidence in the record relied on for summary judgment. Rather than to cite *Kraus* as a basis to award freedom from liability for this dearth of evidence, my view is that the better course is to allow a factfinder to make a determination on evidence that will be available at a later juncture of the matter returned to the trial court. Moreover, it may be necessary to know from expert testimony or at least from an informed fact witness that glow tape is a "standard" piece of stage equipment that should or should not have been supplied and applied to the stage under the terms of the contract between OPA and CDT. This is not clear from the record, and the question is material enough to preclude summary judgment for both VV Venue and OPA, even with CDT dismissed from the suit at this juncture.

{¶ 45} Accordingly, I would sustain Payne's second assignment of error, finding the first assignment of error moot for now.  I would order the trial court to order the presentation of more evidence to determine the existence of a duty under the "open and obvious" analysis as concerns the first assignment of error.  I would instruct the trial court to order the parties to engage in such factual development to enable it to decide the open and obvious question as a matter of law as is contemplated by the dual applications of *Krause* and *Walker.*  For these reasons, I respectfully dissent from the decision of the majority.

_____